IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TOYTRACKERZ LLC,
and NOAH C. COOP,

     Plaintiffs,         Civil Action

v.               Case No. 08-2297-GLR

L. JILL KOEHLER,
et al.,

     Defendants.

## **MEMORANDUM AND ORDER**

Plaintiffs, Toytrackerz LLC, ("Toytrackerz") and one of its managing members, Noah Coop,

bring claims for statutory trademark infringement and false advertising under the Lanham Act,[1] as

well as common law trademark infringement and unfair competition, cybersquatting,[2] business

defamation and injury to business reputation, cancellation of trademark, and invasion of privacy

against individual defendants L. Jill Koehler dba Koehler Customs ("Koehler"), Michael Kosowski

dba Friends of Johnny ("Kosowski"), and Robin Bone dba Robin Bone Toys ("Bone").[3]  On May

6, 2009, the Court sustained defendant American Plastic's Motion to Dismiss Due to Lack of

---

[1]15 U.S.C. §§ 1051 *et seq.*

[2]15 U.S.C. § 1125(d).

[3]Plaintiffs originally named Tristan Koehler as a defendant in this action.  On November 14, 2008, the Court issued an Order to Show Cause (doc. 29) to Plaintiffs based upon their failure to obtain service of process on defendant Tristan Koehler.  In their response to the Order to Show Cause (doc. 31), Plaintiffs stated that they no longer intend to proceed against Tristan Koehler and requested that he be dismissed without prejudice as a defendant.  On April 27, 2009, the Court entered an order dismissing him without prejudice from the case.

Personal Jurisdiction and dismissed it from the action.[4]

The parties have consented to jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  This matter comes before the Court upon the following motions to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2):  Motion by Defendant Koehler for Dismissal of Plaintiffs' Complaint Due to Lack of Jurisdiction (doc. 9);  Motion by Defendant Bone for Dismissal of Plaintiffs' Complaint Due to Lack of Jurisdiction (doc. 15); and Motion by Defendant Kosowski for Dismissal of Plaintiffs' Complaint Due to Lack of Jurisdiction (doc. 18).  For the reasons discussed herein, the motions to dismiss defendants Koehler and Kosowski are denied, and the motion to dismiss defendant Bone is sustained.

## I.    Background facts

Plaintiff Toytrackerz is a limited liability company, organized under the law of Kansas with its principal place of business in Fort Scott, Kansas.  It designs, manufactures, packages, promotes and offers for sale 1:6 scale western-style, collectible toy action figures and accessories via the Internet and trade shows in the Kansas area, as well as throughout the United States and abroad.[5] Toytrackerz conducts business under the trade names "Circle X Ranch," "Marxman Bros Creations," and "Marx Toys Co., Inc."  It uses the trademarks "Magic Marxie" [figural logo], "Marx," "Johnny West," "Johnny West Adventure," "Fort Apache Fighters," "Circle X Ranch," "Best of the West," "Jed Gibson," and "Marxman."[6]  It claims it has valid, protected, actionable, and enforceable rights in all of these trade names and trademarks.

---

[4]*See* doc. 73.

[5]Compl. (doc. 1) ¶ 2.

[6]*Id*. ¶ 3.

2

Plaintiffs allege in their Complaint that defendants Koehler, Kosowski and Bone have manufactured and offered for sale collectible 1:6 scale action figure goods bearing the Toytrackerz' trademarks.  They further allege that these defendants have engaged in a series of comparative advertisements, promotional initiatives, and sales statements targeting the market for collectible 1:6 scale action figures, which includes Toytrackerz' products.  In these advertisements, initiatives, and statements, defendants make a number of allegedly false and misleading claims and representations about the quality and origin of Toytrackerz products, and disparaging comments about the business and personal reputations of the owners of Toytrackerz.

Defendant Koehler is a resident of Ohio.  She appears *pro se*.  Plaintiffs allege that she manufactured or caused to be manufactured 1:6 scale action figure accessories nearly identical to those made by Toytrackerz.  She allegedly promotes, discusses, advertises, and offers for sale goods bearing Toytrackerz' trademarks on her website  www.koehlercustoms.com and eBay.  She also prints and distributes display packaging and packaging inserts that bear the allegedly infringing trademarks.  Plaintiffs further allege that defendant Koehler is the listed owner and moderator of an on-line chat group that is used to defame them, disparage their products, confuse and divert their customers, and portray Toytrackerz and its products in a bad light to customers and collectors of 1:6 scale action figures.  Plaintiffs allege that defendant Koehler posted emails on her website purportedly between herself and Noah Coop dated from 2004 to 2006.  These emails allegedly display private disputes between Koehler and Noah Coop in the context of their business relationship during those years.

Defendant Kosowski is a resident of New York.  He also appears *pro se*.  Plaintiffs allege that he manufactured or caused to be manufactured 1:6 scale action figure accessories nearly

identical to those made by Toytrackerz, and that he promotes, discusses, and advertises these goods on his website www.friendsofjohnny.com.  Plaintiffs also allege that defendant Kosowski uses the on-line chat group owned by co-defendant Koehler to post comments that are false and misleading with the sole intent of confusing customers, diverting customers and sales, and disrupting Toytrackerz' existing and potential customer relationships by casting Toytrackerz, its owners and its products in a negative light.  Plaintiffs further allege that defendant Kosowski engaged in cybersquatting by purposefully registering domain names virtually identical to trademarks owned by Toytrackerz in November 2006, after receiving notice that Toytrackerz claims the trademarks. Plaintiffs allege that Kosowski registered these domain names with the express intent to prevent Toytrackerz from registering them and to use them to engage in unfair competition and deceptive business practices by creating shell websites using Toytrackerz trademarks.

Defendant Bone is a resident of Wisconsin.  He too appears *pro se*.  Plaintiffs allege that he manufactured or caused to be manufactured 1:6 scale action figure accessories nearly identical to those made by Toytrackerz.  He promotes, discusses, advertises, and offers for sale these allegedly infringing goods on websites associated with him, to-wit: www.friendsofjohnny.com and www.robinbonetoys.com.   The complaint alleges that defendant Bone continues to offer for sale, through a fixed-price interactive commercial webstore hosted by eBay, goods that bear the Toytrackerz trademarks after receiving notice and knowledge that Toytrackerz claims the trademarks and after it filed notices of trademark infringement notices that terminated his eBay auctions.

Plaintiffs allege in paragraph 9 of their complaint that the Court has personal jurisdiction over defendants because they have advertised, offered for sale, distributed, sold, or participated in the sale of merchandise within Kansas.  They further allege that defendants have engaged in acts or

4

omissions within Kansas that cause injury, engaged in acts or omissions outside of Kansas that result in injury within the state, manufactured or distributed products used or consumed within Kansas in the ordinary course of trade, or otherwise made or established contacts with Kansas sufficient to permit the exercise of personal jurisdiction.

## II.     Standard for ruling on a motion to dismiss for lack of personal jurisdiction

When a defendant challenges a court's personal jurisdiction in a motion to dismiss, the plaintiff bears the burden of establishing personal jurisdiction over the defendant.[7]  When, as in this case, the district court considers a motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion."[8] The plaintiff may make this prima facie showing by demonstrating, by affidavit or other written materials, facts that if true would support jurisdiction over the defendant.[9]

In ascertaining the facts necessary to establish personal jurisdiction, the district court must accept as true the allegations set forth in the complaint to the extent they are uncontroverted by the defendant's affidavits.[10]   Only the well-pled facts of the plaintiff's complaint, however, as distinguished from mere conclusory allegations, must be accepted as true.[11]  If the parties present conflicting affidavits, all factual disputes are resolved in favor of the plaintiff, and the plaintiff's

---

[7]*OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

[8]*Id.*

[9]*Id.*

[10]*Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987).

[11]*Id.*

*prima facie* showing is sufficient notwithstanding the contrary presentation.[12]  In order to defeat the plaintiff's *prima facie* showing of personal jurisdiction, the moving defendant must present a compelling case demonstrating "that the presence of some other considerations would render jurisdiction unreasonable."[13]

### III.   Whether Plaintiffs have established personal jurisdiction over the Individual Defendants

Defendants Koehler, Bone, and Kosowski ( "Individual Defendants") bring their motions pursuant to Fed. R. Civ. P. 12(b)(2).  They ask the Court to dismiss Plaintiffs' claims against them for lack of personal jurisdiction.  They contend that Plaintiffs have failed to establish a basis for the Court to exercise personal jurisdiction over them.

In determining whether a federal court has personal jurisdiction over a nonresident defendant, the court must determine "(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process."[14]  Where, as here, the underlying action is based on a federal statute, the court applies state personal jurisdiction rules if the federal statute does not specifically provide for national service of process.[15]  Because neither the Lanham Act[16] nor the

---

[12]*Id.*

[13]*OMI Holdings,* 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

[14]*Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006).

[15]*See* Fed. R. Civ. P. 4(k)(1)(C) (providing that service of summons establishes personal jurisdiction over a defendant when authorized by a federal statute).

[16]15 U.S.C. §§ 1051 *et seq*.

Anti-Cybersquatting Consumer Protection Act ("ACPA")[17] provide for nationwide service of process, the Court looks to the Kansas long-arm statute.

### A.  The Kansas long-arm statute

Plaintiffs contend that specific personal jurisdiction is proper under the Kansas long-arm statute, K.S.A. 60-308(b)(1), in that the activities of the Individual Defendants show they have deliberately established minimum contacts with Kansas.  The statute provides as follows:

> Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:
>
> (A) Transaction of any business within this state;
>
> (B) commission of a tortious act within this state;
>
> (C) ownership, use or possession of any real estate situated in this state;
>
> (D) contracting to insure any person, property or risk located within this state at the time of contracting;
>
> (E) entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state;
>
> (F) acting within this state as director, manager, trustee or other officer of any corporation organized under the laws of or having a place of business within this state or acting as executor or administrator of any estate within this state;
>
> (G) causing to persons or property within this state any injury arising out of an act or omission outside of this state by the defendant if, at the time of the injury either (I) the defendant was engaged in solicitation or service activities within this state; or (ii) products, materials or things processed, serviced or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of trade or use;
>
> (H) living in the marital relationship within the state notwithstanding subsequent

---

[17] 15 U.S.C. § 1125(d).

departure from the state, as to all obligations arising for maintenance, child support or property settlement under article 16 of this chapter, if the other party to the marital relationship continues to reside in the state;

(I) serving as the insurer of any person at the time of any act by the person which is the subject of an action in a court of competent jurisdiction within the state of Kansas which results in judgment being taken against the person;

(J) performing an act of sexual intercourse within the state, as to an action against a person seeking to adjudge the person to be a parent of a child and as to an action to require the person to provide support for a child as provided by law, if (I) the conception of the child results from the act and (ii) the other party to the act or the child continues to reside in the state; or

(K) entering into an express or implied arrangement, whether by contract, tariff or otherwise, with a corporation or partnership, either general or limited, residing or doing business in this state under which such corporation or partnership has supplied transportation services, or communication services or equipment, including, without limitation, telephonic communication services, for a business or commercial user where the services supplied to such user are managed, operated or monitored within the state of Kansas, provided that such person is put on reasonable notice that arranging or continuing such transportation services or telecommunication services may result in the extension of jurisdiction pursuant to this section.

Plaintiffs appear to invoke jurisdiction under subsections (A), (B), and (G) of the Kansas long-arm statute.  The statute authorizes the exercise of jurisdiction to the full extent permitted by the Constitution.[18]  As the statute is liberally construed by Kansas courts, jurisdiction is generally considered proper under Kansas law and courts proceed directly to the due process issue.[19]

Based upon the allegations of Plaintiffs' complaint, the Court concludes that Plaintiffs have made a *prima facie* showing that the alleged tortious actions of the Individual Defendants subject them to jurisdiction under the "commission of a tortious act" provision of the Kansas long-arm

---

[18]*In re Hesston Corp.*, 254 Kan. 941, 951, 870 P.2d 17, 25 (1994) (Kansas long arm statute is liberally construed to assert personal jurisdiction over nonresident defendants to the full extent permitted by the due process clause).

[19]*See OMI Holdings,* 149 F.3d at 1091.

statute, K.S.A. 60-308(b)(1)(B). The allegedly tortious conduct includes common law trademark infringement and unfair competition, business defamation, and invasion of privacy. Under Kansas law, where tortious conduct occurs outside the state, personal jurisdiction may result as long as the injury resulting from the tortious act occurs in the state.[20] Plaintiffs, who are a Kansas company and resident, allege economic injury as a result of the tortious conduct of the Individual Defendants. Thus, the tortious acts may be deemed to have occurred in Kansas for purposes of the long-arm statute.[21]

### B.    Due process

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"[22] Therefore, the "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum."[23] The minimum contacts standard may be met in two ways. First, if a nonresident defendant has "continuous and systematic general business contacts" with the forum state, it may be subjected to the general jurisdiction of the forum state's courts.[24] Second, a court may assert specific jurisdiction

---

[20]*Ling v. Jan's Liquors,* 237 Kan. 629, 633, 703 P.2d 731, 734 (1985) ("[T]he 'tortious act' is not complete until the injury has occurred. In other words, the 'tortious act' is deemed to have occurred in the state where the injury occurs.").

[21]*Id.*

[22]*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).

[23]*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

[24]*Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1066 (10th Cir. 2007) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)).

over a nonresident defendant "if the defendant has 'purposefully directed' his [or her] activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."[25]

Even if the defendant's actions create sufficient minimum contacts, the court must still consider whether the exercise of personal jurisdiction over the defendant "would offend traditional notions of 'fair play and substantial justice.' "[26]  This question turns on whether the district court's exercise of personal jurisdiction over the defendant is reasonable under the circumstances of the case.[27]

### 1.   Specific personal jurisdiction

Plaintiffs do not argue that the Individual Defendants have engaged in continuous and systematic contacts with Kansas to support a finding of general personal jurisdiction over them.  The Court does not otherwise find a premise for such general jurisdiction.  It will  limit its analysis, therefore, to the issue of specific personal jurisdiction.  That analysis involves a two-step inquiry. First, the court must determine whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."[28]  Within this inquiry the court must determine whether the defendant purposefully directed its activities at

---

[25]*Benton v. Cameco*, 375 F.3d 1070, 1075 (10th Cir. 2004) (quoting *Burger King*, 471 U.S. at 472).

[26]*Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (quoting *Burger King*, 471 U.S. at 476).

[27]*Id.* (quoting *Burger King*, 471 U.S. at 477-78).

[28]*World-Wide Volkswagen*, 444 U.S. at 297.

residents of the forum,[29] and whether the plaintiff's claim arises out of or results from "actions by the defendant himself that create a substantial connection with the forum state."[30]   Second, if the defendant's actions create sufficient minimum contacts, the court must then consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice."[31]   This latter inquiry requires a determination of whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is "reasonable" in light of the circumstances surrounding the case.[32]

### a.    Minimum contacts

The first step in the test of due process addresses whether the defendant has sufficient minimum contacts with the forum state.  In judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum, and the litigation.[33]   A court may, consistent with due process, assert specific jurisdiction over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."[34]

### (1)    Defendant Koehler's contacts

Plaintiffs contend that defendant Koehler has the necessary minimum contacts with Kansas

---

[29]*Burger King*, 471 U.S. at 472.

[30]*Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987) (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

[31]*Int'l Shoe*, 326 U.S. at 316.

[32]*OMI Holdings*, 149 F.3d at 1091.

[33]*Id.*

[34]*Burger King*, 471 U.S. at 472 (internal quotations omitted).

to support personal jurisdiction over her.  They rely upon her use of her commercial website to advertise and offer for sale products and accessories that infringe upon Toytrackerz' trademarks. They further allege that she has continued to display and use these trademarks on the website after being advised by Toytrackerz that it claimed ownership of the trademarks.  Plaintiffs also allege that defendant Koehler is the listed owner and moderator of an on-line chat group that is used to defame Plaintiffs, disparage Toytrackerz' products, confuse and divert their customers, and portray Toytrackerz and its products in a bad light to customers and collectors of 1:6 scale action figures. Plaintiffs additionally allege that defendant Koehler posted on her website private emails purportedly between herself and plaintiff Noah Coop dated from 2004 to 2006.  These emails allegedly discuss private disputes between defendant Koehler and plaintiff Noah Coop in the context of their business relationship during those years and are posted solely to defame and embarrass Plaintiffs.

> **(a)** **Operation of a website that sells infringing products and displays trademarks as a basis for personal jurisdiction**

Plaintiffs contend that the Individual Defendants have the necessary minimum contacts to establish personal jurisdiction by virtue of their operation of commercial websites that offer for sale products that allegedly infringe upon Toytrackerz' trademarks.   Plaintiffs compare the instant case with another District of Kansas case, *Rainy Day Books, Inc. v. Rainy Day Books & Café, L.L.C.*[35] In that case the court found jurisdiction proper in Kansas over a Maryland company that had infringed on the trademark of a Kansas bookseller. The court concluded that the defendant had established a commercial website that allowed it to "do business" and "enter into contracts" with

---

[35]186 F. Supp. 2d 1158, 1165-66 (D. Kan. 2002).

residents of a foreign jurisdiction over the Internet.[36]

The Court notes in examining the quality and nature of the contacts of the Individual Defendants with Kansas that it must examine the circumstances of the websites as they existed at the time this lawsuit was filed, not later.[37]  Thus, the Court will confine its analysis to the nature of the websites as they existed when the instant action was filed on June 30, 2008.  The Affidavit of Plaintiffs' counsel submitted in support of Exhibit 1[38] to Plaintiffs' Brief in Response to Koehler's Motion to Dismiss states that screen captures were taken of Koehler's website www.koehlercustoms.com between July 6, 2008 and August 21, 2008.  Defendant Koehler does not suggest and the Court finds no facts showing that the screen captures attached as Exhibit 1 to Plaintiffs' Brief are inaccurate depictions of the website at the time of the filing of this action.  The Court thus will construe the screen captures taken between July 6, 2008 and August 21, 2008 to reflect the website www.koehlercustoms.com at the time of the filing of this action.

As persuasive authority for evaluating the extent to which Internet contacts may establish personal jurisdiction over a nonresident defendant, the Court notes *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*[39]  *Zippo* involved a series of trademark claims brought by Zippo Manufacturing (the maker of Zippo lighters) in Pennsylvania against Zippo Dot Com, a California corporation with an Internet news website. In that case the contacts of the defendant with the forum state "occurred almost exclusively over the Internet."  The defendant did not have offices, employees, or agents in

---

[36]*Id.* at 1164.

[37]*See Capitol Fed. Sav. Bank v. E. Bank Corp.*, 493 F. Supp. 2d 1150, 1159 (D. Kan. 2007) (court must examine the circumstances as they existed at the time the lawsuit was filed).

[38]Doc. 13-2.

[39]952 F. Supp. 1119 (W.D. Pa. 1997).

the forum; it advertised there only through its website; and only two percent of its news service subscribers lived there.[40]   The court reasoned that the constitutionality of an exercise of personal jurisdiction is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet."[41]   The court set forth a "sliding scale" analysis for Internet-based personal jurisdiction:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.[42]

The court then found that Zippo Dot Com was doing business over the Internet by virtue of entering into thousands of electronic contracts with Pennsylvania residents, and this constituted purposeful activity of doing business in Pennsylvania.[43]

Since *Zippo* set forth the "sliding-scale" analysis, appellate courts have incorporated various additional requirements for Internet contacts.  In *ALS Scan v. Digital Service Consultants, Inc.*,[44] the

---

[40]952 F. Supp. at 1121.

[41]*Id.* at 1124.

[42]*Id.* (citations omitted).

[43]*Id.* at 1125-26.

[44]293 F.3d 707 (4th Cir. 2002).

Fourth Circuit expressly incorporated an intent requirement:

> [A] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.[45]

Similarly, in *Neogen Corp. v. Neo Gen Screening, Inc.*,[46] the Sixth Circuit held that the purposeful availment requirement is satisfied "if the [website] is interactive to a degree that reveals specifically intended interaction with residents of the state."[47] In *Toys "R" Us, Inc. v. Step Two, S.A.*,[48] the Third Circuit concluded that the "mere operation of a commercially interactive [website] should not subject the operator to jurisdiction anywhere in the world."[49] Rather, there must be evidence that the defendant "purposefully availed" itself of conducting activity in the forum state, by directing its website to the state, knowingly interacting with residents of the forum state via its website, or through sufficient other related contacts.[50]

Plaintiffs allege in this case that defendant Koehler operates a commercial website under the domain name www.koehlercustoms.com. They contend that Koehler thereby openly offers for sale items bearing the infringing trademarks "Johnny West Adventure," "Johnny West," "Best of the West," "Marx," and "Jed Gibson." The purchaser could select the items desired for purchase and

---

[45] *Id.* at 714.

[46] 282 F.3d 883 (6th Cir. 2002).

[47] *Id.* at 890.

[48] 318 F.3d 446, 454 (3d Cir. 2003).

[49] *Id.*

[50] *Id.*

add them to a shopping cart, powered by PayPal.[51]  Koehler purportedly derives her authority to use the trademarks from a license with American Plastic Equipment, Inc., by stating "I have a legal contract with American Plastic Equipment, Inc. the rightful owner of the Marx trademarks and copyrights, and I pay royalties on every item of approved Marx reproduction merchandise that I sell."[52]  The website also states, "You can purchase items directly from this website!"  The webpage contains a hot link directly to www.ebay.com, where Koehler has also offered the allegedly infringing items for sale.[53]  A typical eBay listing contains a shipping calculator that allows residents of any state, including Kansas, to calculate their shipping costs.

Applying the sliding scale framework set out in *Zippo* and resolving all factual disputes in favor of Plaintiffs, the Court finds that defendant Koehler's website does not fall within the category of "clearly doing business over the Internet" so as to establish jurisdiction over her.  Plaintiffs have shown that at the time of filing this lawsuit Koehler's website allowed an Internet user to purchase the allegedly infringing products.  A review of defendant Koehler's website reveals that a customer can purchase items directly from the website by adding them to a cart and paying by using PayPal. The website prominently states "You can purchase items directly from this website!"[54]

Supported by her affidavit, Defendant Koehler states she has neither sold nor shipped any merchandise to any person with an address in Kansas, except for two separate sales to Plaintiffs. Neither her website nor her eBay postings have generated a single inquiry from a resident of Kansas.

---

[51]*See* Ex. 1 to Pls.' Br. in Opp'n to Def. Koehler's Mot. to Dismiss for Lack of Personal Jurisdiction (doc. 13-2).

[52]*Id.*

[53]*Id.*

[54]*Id.*

The fact that defendant Koehler has not sold or shipped any product to a Kansas address is not dispositive of the inquiry.   It does show that defendant Koehler has not directed her website toward Kansas and has not knowingly interacted with residents of Kansas through her website so as to establish that she does business in Kansas.

Providing a link with access to Koehler's eBay auctions to purchase items also falls short of showing that defendant Koehler is doing business in Kansas.  A majority of courts that have considered the question of personal jurisdiction have held that an eBay seller does not purposefully avail herself of the privilege of doing business in a forum state absent some additional conduct directed at the forum state.[55]  They have consistently held that the usual online auction process does not rise to the level of purposeful conduct required to assert specific jurisdiction.[56]  On-line auction sales on eBay are considered "random" and "attenuated," and "the choice of the highest bidder is beyond the control of the seller."[57]  Other than allowing a user to purchase items on the website or by clinking on a link to eBay auctions, Plaintiffs have not pointed to any other aspect of Koehler's website that would justify categorizing it as "clearly doing business over the Internet."

The Court thus determines that defendant Koehler's operation of a website that offers for sale products that allegedly infringe upon Toytrackerz trademarks does not provide the constitutionally-required minimum contacts for establishing personal jurisdiction over her.  Notwithstanding this

---

[55]*Boschetto v. Hansing*, No. C-06-1390 VRW, 2006 WL 1980383, at *4 (N.D. Cal. July 13, 2006).

[56]*Action Tapes, Inc. v. Weaver*, No. Civ. 3:05-CV-1693-H, 2005 WL 3199706, at *3 (N.D. Tex. Nov. 23, 2005); *United Cutlery Corp. v. NFZ, Inc.*, No. Civ. CCB-03-1723, 2003 WL 22851946, at *4 (D. Md. Dec. 1, 2003); *Machulsky v. Hall*, 210 F. Supp. 2d 531, 544-45 (D.N.J. 2002); *Winfield Collection, Ltd. v. McCauley*, 105 F. Supp. 2d 746, 749 (E.D. Mich. 2000).

[57]*Boschetto*, 2006 WL 1980383, at *4 (citing *Winfield Collection*, 105 F. Supp. 2d at 749).

determination, the Court finds that under the Supreme Court's effects test, discussed below, defendant Koehler has sufficient other related contacts with the state of Kansas for the Court to exercise personal jurisdiction over her.

           **(b)**        **Tortious conduct as a basis for jurisdiction under the effects test**

Plaintiffs also contend that defendant Koehler has sufficient minimum contacts to support specific jurisdiction over her in Kansas, by application of the effects test set forth by the United States Supreme Court in *Calder v. Jones*.[58]   Specifically they contend that Koehler's continuing engagement in trademark infringement, after receiving notice of Toytrackerz' claims in the trademarks, and posting defamatory material about Plaintiffs on her websites and other Internet venues, demonstrate that she has expressly aimed her activities at Kansas residents.  They urge that Kansas has been the focal point of these torts and their resulting harm.

For the Court to find specific jurisdiction, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[59]   In the context of intentional torts, this test has been alternatively stated as whether the defendant's actions " 'were expressly aimed at' the forum jurisdiction and [whether] the forum jurisdiction was 'the focal point' of the tort and its harm."[60] The purposeful availment/express aiming requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral

---

[58]465 U.S. 783, 788-790 (1984).

[59]*Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citation omitted).

[60]*Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1080 (10th Cir.1995) (quoting *Calder v. Jones*, 465 U.S. 783, 789 (1984)).

activity of another party or a third person."[61] The contacts with the forum state must be such that it is foreseeable that the defendant "should reasonably anticipate being haled into court there."[62]

In *Calder v. Jones*,[63] the Supreme Court set out what is now commonly called the "effects test." It provides that the exercise of personal jurisdiction over a nonresident defendant does not violate due process when (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum state, such that the forum state was the focal point of the tortious activity; and (3) the defendant expressly aimed the tortious conduct at the forum, such that the forum state was the focal point of the tortious activity.[64] In *Calder*, actress Shirley Jones, of Partridge Family fame, brought suit in California alleging libel, invasion of privacy, and intentional infliction of emotional harm based on an article published in the *National Enquirer*.[65] While the *Enquirer* and its distributor chose not to contest jurisdiction, the writer and editor, both residents of Florida, challenged the authority of the California courts to hear the suit, arguing that the article at issue was written and edited in Florida and, though the *Enquirer* was distributed nationally, the individual defendants had few contacts with California. The Supreme Court found personal jurisdiction was proper in California based on the "effects" of the defendants' Florida conduct in California.[66] The Court reasoned:

---

[61]*Burger King*, 471 U.S. at 475 (internal citations and quotation marks omitted).

[62]*World-Wide Volkswagen*, 444 U.S. at 297.

[63]465 U.S. 783, 788-790 (1984).

[64]*Id*.

[65]*Id.* at 785-86.

[66]*Id.* at 789.

The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of [the plaintiff's] emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered.[67]

In *Far West Capital, Inc. v. Towne*,[68] the Tenth Circuit examined *Calder* and its progeny. It held that the mere fact that an out-of-state defendant has committed business torts that have allegedly injured a resident of the forum "does not necessarily establish that the defendant possesses the constitutionally required minimum contacts."[69] The court must make a particularized inquiry as to the extent to which the defendant purposefully availed itself of the benefits of the laws of the forum.[70] In doing so, the court examines the contacts created by the out-of-state defendant in committing the alleged tort.[71]

The *Far West* court quoted the reasoning of the Middle District of Alabama to explain why it is fair to allow a plaintiff in an intentional tort case to bring suit in its home forum:

> [W]hen a defendant intentionally takes some action with the knowledge that the result will be harm to a specific victim in another state, the picture involves more than mere foreseeability or the likelihood that fortuitous and undirected conduct will have an effect in that state. When the conduct is intentional and is directed at a victim in another state, the defendant may be held to have expected its conduct to have an effect in that state, and further to have expected that the victim will bring

---

[67]Id. at 788-89.

[68]46 F.3d 1071, 1077-80 (10th Cir. 1995).

[69]*Far West,* 46 F.3d at 1079.

[70]*Id.*

[71]*Id.* at 1079-80.

20

suit for redress there.[72]

*      *      *

In the typical intentional tort case, it is both fair and just to allow the victim of an alleged tort to call the tortfeasor to account in the victim's home forum. A contrary result would force injured parties to go to the alleged tortfeasor for redress even though, taking the victim's position as justified at the institution of suit, the tortfeasor has knowingly brought about the situation through its actions.[73]

Applying a narrow interpretation of the *Calder* "effects" test, the *Far West* court affirmed the district court's conclusion that the exercise of Utah's jurisdiction over the nonresident defendants would violate due process even though the plaintiff alleged intentional torts and that it suffered injury in Utah.[74] Specifically, the Tenth Circuit concluded that, unlike the situation in *Calder*, the defendants' actions were not "expressly aimed at" Utah and Utah was not the "focal point" of the tort and its injury.[75] The court found no evidence that the defendants' alleged torts had any connection to Utah beyond the plaintiff's corporate domicile and all involved disputes about rights under a series of Nevada-centered agreements.[76] Although the plaintiff argued that it suffered the financial effects of these alleged torts in Utah where it is incorporated, the court held that under *Calder* and its progeny, the defendants' contacts with Utah were insufficient to establish personal jurisdiction.[77]

---

[72]*Id.* at 1078 (citing *Coblentz GMC/Freightliner, Inc. v. Gen. Motors Corp.*, 724 F. Supp. 1364, 1368 (M.D. Ala. 1989)).

[73]*Id.* at 1078 (citing *Coblentz*, 724 F. Supp. at 1371).

[74]*Id.* at 1075.

[75]*Id.* at 1080.

[76]*Id.*

[77]*Id.*

More recently, in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,[78] the Tenth Circuit distilled the *Calder* rule in the context of tort claims to find that purposeful direction may exist when a defendant engages in "(a) an intentional action . . . (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state."[79]   Some courts have adopted a broad interpretation of the requirement that the action be expressly aimed at the forum state, finding it satisfied where the defendant "individually target[s] a known forum resident."[80]  The Tenth Circuit has taken a more restrictive approach, "holding that the forum state itself must be the 'focal point of the tort.'"[81]

In the instant case, the Court finds that Plaintiffs have sufficiently established personal jurisdiction over defendant Koehler under the *Calder* "effects test" for allegedly tortious conduct directed at the forum state.  First, they have provided a *prima facie* case to show that defendant Koehler acted intentionally and with knowledge that her use of the trademarks would cause harm to Plaintiffs in Kansas by continuing to offer for sale products, accessories, and packaging insets containing the trademarks and openly displaying the trademarks on her website, after receiving notice of Toytrackerz' claims to the trademarks.  Second, with activity comparable to *Calder*, defendant Koehler's alleged actions of posting disparaging and defamatory comments and material about Plaintiffs and private emails from plaintiff Coop on her website and other Internet venues also provide a basis for personal jurisdiction.  Her postings were from Kansas sources and concerned the

---

[78]514 F.3d 1063, 1072 (10th Cir. 2008).

[79]*Id.*

[80]*Bancroft & Masters, Inc. v. August Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).

[81]*Dudnikov*, 514 F.3d at 1075 n.9 (quoting *Far West*, 46 F.3d at 1080).

22

Kansas business activities of a Kansas company and resident.  These comments were targeted at a Kansas company and its owner.  Kansas was the focal point of defendant Koehler's actions in making allegedly disparaging comments about Toytrackerz and its products, its owners, and its counsel.  These comments portrayed a Kansas company and its products in a bad light to customers and collectors.  Kansas was also the focal point of defendant Koehler's actions in posting private emails purportedly between herself and Kansas resident Noah Coop.  In addition, the brunt of the harm to Plaintiffs by defendant Koehler's intentional actions was suffered in Kansas.

Defendant Koehler cites District Judge Vratil's opinion in *Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*,[82] in support of her motion to dismiss.  In *Sunlight Saunas,* the plaintiff, in response to a motion to dismiss for lack of personal jurisdiction, argued that the out-of-state defendants created a disparaging and infringing website to injure its Kansas-based business and voluntarily continued, modified, and reestablished the website after receiving notice from the plaintiff that the website was defamatory and infringed upon its trademark and trade name.[83]  The court found that the website containing the disparaging comments did not subject defendants to personal jurisdiction under the *Calder* "effects test" for tortious conduct directed at the forum state.[84]  The website made no mention of Kansas or the parties' activities in Kansas, and was not directed to users in Kansas any more than to users worldwide.[85]

Here, unlike the facts of *Sunlight Saunas*, defendant Koehler has posted comments and

---

[82]427 F. Supp. 2d 1011, 1021 (D. Kan. 2006).

[83]*Id*. at 1018.

[84]*Id.* at 1020-22.

[85]*Id.* at 1021.

correspondence on her website, as well as other Internet venues, specifically about Plaintiffs and their activities in Kansas, the location respectively of their principal place of business and residence. Defendant Koehler also, as in *Calder*, used sources of the forum state for her allegedly tortious Internet postings, including private emails and correspondence from Kansas resident Plaintiff Coop. Defendant Koehler knew the allegedly defamatory postings on her website and other Internet venues would have an impact on Plaintiffs and that the brunt of the harm would be felt in Kansas, where Toytrackerz' principal place of business and customer base is located and where Plaintiff Noah Coop resides. Defendant Koehler's activities on her website thus demonstrate an intentional action expressly aimed at Kansas. Finally, by the allegedly intentional use of a trademark registered to a Kansas company with its principal place of business in Kansas, the brunt of any confusion would be felt in Kansas. Applying the *Calder* effects test, the Court thus finds that Plaintiffs have established that defendant Koehler has the requisite minimum contacts with Kansas.

### (2)    Defendant Kosowski's contacts

Plaintiffs contend that defendant Kosowski has sufficient minimum contacts with Kansas by his actions of manufacturing or causing to be manufactured 1:6 scale action figure accessories nearly identical to those made by Toytrackerz. Defendant Kosowski promotes, discusses, and advertises these goods on his website. Plaintiffs allege that defendant Kosowski uses the on-line chat group owned by co-defendant Koehler to post comments that are false and misleading with the sole intent of confusing customers, diverting customers and sales, and disrupting Toytrackerz' existing and potential customer relationships by casting Toytrackerz, its owners and its products in a negative light. Plaintiffs further allege that defendant Kosowski engaged in cybersquatting by purposefully registering domain names virtually identical to trademarks owned by Toytrackerz in November

2006, after receiving notice of its claims to the trademarks.  Plaintiffs allege that Kosowski registered these domain names with the express intent to prevent Toytrackerz from registering them and to use them to engage in unfair competition and deceptive business practices by creating shell websites that use its trademarks.

> **(a)     Operation of a website that sells infringing products and displays trademarks as a basis for personal jurisdiction[86]**

Defendant Kosowski operates a commercial website under the domain name www.friendsofjohnny.com.  Plaintiffs contend that on that website Kosowski openly advertises and offers for sale items bearing the infringing trademarks "Johnny West," "Marx," "Fort Apache Fighters,"and "Jed Gibson."   Kosowski claims in the website to derive his authority to use the trademarks from a license with American Plastic.  The website contains a link whereby a customer can buy an item either by email to co-defendant Bone or by accessing Bone's website.[87]

Other than this link, whereby potential customers can access co-defendant Bone, Plaintiffs have pointed to no aspect of Kosowski's website www.friendsofjohnny.com that would justify characterizing it on the *Zippo* sliding scale as "clearly doing business over the Internet."  The Court finds that on the sliding scale, Kosowski's website should be classified as a passive website.  As such, it does not of itself create sufficient minimum contacts to establish personal jurisdiction over defendant Kosowski.

---

[86]Plaintiffs state that defendant Kosowski has made no changes to his website www.friendsofjohnny.com since the action was filed.  The Court thus construes the website screen captures taken on November 10, 2008, to reflect the website at the time of the filing of the action.

[87]*See* Ex. 2 to Pls.' Br. in Opp'n to Def. Kosowski's Mot. to Dismiss for Lack of Personal Jurisdiction (doc. 27-3).

**(b)     Tortious conduct as a basis for jurisdiction under the effects test**

Plaintiffs also contend that defendant Kosowski has sufficient minimum contacts with Kansas because of his alleged cybersquatting in purposefully registering domain names in November 2006, virtually identical to trademarks owned by Toytrackerz and after receiving notice of its claims to the trademarks.  Plaintiffs allege that Kosowski registered these domain names with the express intent to prevent Toytrackerz from doing so and to use them to engage in unfair competition and deceptive business practices by creating shell websites with Toytrackerz trademarks.  Plaintiffs further allege that defendant Kosowski manufactured or caused  to be manufactured 1:6 scale action figure accessories nearly identical to those made by Toytrackerz. Defendant Kosowski promotes, discusses and advertises these goods on websites with domain names registered to defendant Kosowski:  www.friendsofjohnny.com, and www.robinbonetoys.com. Plaintiffs allege that defendant Kosowski also uses the on-line chat group owned by co-defendant Koehler to post a stream of commercial speech that is false and misleading with the sole intent of confusing customers, diverting customers and sales, and disrupting customer relationships of Toytrackerz by casting it, its owners, and its products in a negative light.

In *Panavision Int'l, L.P. v. Toeppen*,[88] the Ninth Circuit affirmed the exercise of personal jurisdiction over a nonresident defendant who had allegedly registered the plaintiff's trademark as part of a domain name, thereby preventing the plaintiff from obtaining such registration.[89]  The court held that merely registering another's trademark as a domain name is not a sufficient basis for the

---

[88]141 F.3d 1316, 1321-22 (9th Cir. 1998).

[89]*Id.*

26

exercise of personal jurisdiction.[90]  Instead, "something more" must exist to demonstrate that the defendant intentionally directed activities toward the forum state.[91]  The analysis must begin with what else is needed, that is, what level of interaction with an Internet website is required to rise to the level of "minimum contacts" such that a defendant maintaining that website has purposefully availed itself of the laws of the forum state, making specific personal jurisdiction over it appropriate. Although noting that the mere posting of an infringing trademark on a website "without more" might not suffice to show that the defendant purposefully aimed his activity toward the forum state, the court found that the defendant's use of the plaintiff's trademarks as his domain name on the Internet was an attempt to extort payment from the plaintiff for the names and that this intentional conduct was sufficient to permit jurisdiction.[92]

In this case, the Court finds that the conduct of defendant Kosowski in registering domain names that allegedly infringe upon Toytrackerz' trademarks, by itself, is not sufficient to establish minimum contacts with Kansas.  Unlike *Panavision*, there are no allegations or facts suggesting that defendant Kosowski intended to use registration of the domain name to extort money from Plaintiffs.

Registering domain names, however, does not constitute the only alleged contact by defendant Kosowski with Kansas.  Plaintiffs also allege that he manufactured or caused to be manufactured 1:6 scale action figure accessories nearly identical to those made by Toytrackerz and that he promotes, discusses, and advertises these goods on his website.  He  continued to offer for sale these goods that contained the Toytrackerz trademarks and openly displayed the trademarks on

---

[90]*Id.* at 1321.

[91]*Id*. at 1322.

[92]*Id.*

his website, after he received notice that Toytrackerz claimed them.  Plaintiffs further allege that defendant Kosowski uses the on-line chat group, owned by co-defendant Koehler, to post misleading and negative comments with the sole intent of confusing customers, diverting customers and sales, and disrupting customer relationships of Toytrackerz by casting it, its owners, and its products in a negative light.

Based upon the entirety of these alleged contacts, the Court finds that Plaintiffs have made a sufficient *prima facie* showing  that defendant Kosowski has the requisite minimum contacts with Kansas to support personal jurisdiction over him.  Any of his activities taken alone might not support a finding of personal jurisdiction.  Considering the totality of his alleged actions — registering trademarks of a Kansas company as domain names, manufacturing and offering for sale action figures that infringe upon its trademarks, openly displaying them on his website after notice of its claims of ownership, and posting misleading and negative comments about a Kansas company and resident — the Court finds the existence of sufficient minimum contacts with Kansas.  Plaintiffs have sufficiently shown for jurisdictional purposes that defendant Kosowski intentionally and expressly aimed his actions at Kansas.  They have further shown that the brunt of any injury caused by posting misleading and negative comments about Plaintiffs and Toytrackerz products would be felt in Kansas by confusing and diverting its customers and potential sales, disrupting customer relationships, and casting Toytrackerz, its owners, and its products in a negative light.

**(c)        Prior business dealings with Plaintiffs in Kansas**

Plaintiffs also contend that defendant Kosowski has done sufficient business with Plaintiffs in Kansas to establish minimum contacts with the state.  They point out that in 2005 Kosowski acted as an intermediary in negotiating a purchase of 1:6 scale action figures and accessories from original

Marx molds, between Plaintiff Noah Coop, American Plastic Equipment, and a defunct company called Marx Toys and Entertainment. Emails between Coop and Kosowski show a clear agreement that Kosowski would arrange introductions between the parties and act as a middleman in negotiating a deal. Plaintiffs argue that these prior actions by Kosowski show that he clearly conducted business with plaintiff Noah Coop, a Kansas resident, and that this contact is relevant to the question before the court as to the rights of Plaintiffs in their trademarks.

The Court finds that these prior business dealings with Plaintiffs do not appear to arise out of or relate to the claims asserted by Plaintiffs in this action and do not create an appropriate basis for personal jurisdiction. They do tend to support the finding of personal jurisdiction under the effects test discussed above, however, because they show that defendant Kosowski had knowledge of Toytrackerz and its collectible toy business in Kansas.

### (3)     Defendant Bone's contacts

Plaintiffs contend that defendant Bone had sufficient minimum contacts with Kansas because of the following activities on his part: manufacturing or causing to be manufactured 1:6 scale action figure accessories nearly identical to those made by Kansas company Toytrackerz; and promoting, discussing, advertising, and offering for sale these allegedly infringing goods. The complaint alleges that defendant Bone continues to offer for sale, through a fixed-price interactive commercial webstore hosted by eBay, goods that bear the Toytrackerz trademarks after receiving notice and knowledge that Toytrackerz claims the trademarks and after it filed trademark infringement notices that terminated his eBay auctions. According to the complaint, these goods are promoted, discussed and advertised on websites associated with defendant Bone, to-wit: www.friendsofjohnny.com and www.robinbonetoys.com. Both websites have invitations to buy the products via links to direct sales

on eBay and email links to arrange a direct purchase from defendant Bone.

        **(a)**      **Operation of a website that sells infringing products and displays trademarks as a basis for personal jurisdiction[93]**

Plaintiffs allege that defendant Bone operates a commercial website under the domain name www.robinbonetoys.com.  On that website, Bone openly advertises and offers for sale items bearing the infringing trademarks "Johnny West," "Marx," "Fort Apache Fighters," and "Jed Gibson."  Bone claims authority to use the trademarks from a license with American Plastic by displaying on his website: "Marx Toys, Johnny West, Bill Buck, Jed Gibson and all related characters, names trade dress, designs, etc. are TM & © American Plastic Equipment, Inc., Fort Apache is a registered trademark of [American Plastic].  All rights reserved."[94]  Bone also states on his website, "Robin Bone Toys is proud to be one of only TWO sources to carry the Special 2006 Exclusive Limited Edition Official Fort Apache Fighters Wilderness Scout Gear advance preview set!" and "CLICK HERE To E-Mail Robin Bone Toys To Purchase Your FoJ Sets!."[95]

Other than appearing to permit a customer to order products from Bone's website www.robinbonetoys.com, Plaintiffs have not shown any aspect of his website that would justify categorizing on the *Zippo* sliding scale as "clearly doing business over the Internet."  The Court finds that on the sliding scale, Bone's website should be classified as a passive website.  As such, the website alone does not constitute sufficient minimum contacts for purposes of establishing

---

[93]Plaintiffs state that defendant Bone has made no changes to his website www.robinbonetoys.com since the action was filed.  The Court thus construes the website screen captures taken on October 23, 2008, to reflect the website at the time of the filing of the action.

[94]*See* Ex. 2 to Pls.' Br. in Opp'n to Def. Bone's Mot. to Dismiss for Lack of Jurisdiction (doc. 24-3).

[95]*Id.*

personal jurisdiction over him in Kansas.

> **(b)** **Tortious conduct as a basis for jurisdiction under the effects test**

Plaintiffs argue that defendant Bone has sufficient minimum contacts from his activities of manufacturing or causing to be manufactured 1:6 scale action figure accessories nearly identical to those made by Toytrackerz and promoting, discussing, advertising, and offering for sale these allegedly infringing goods. Plaintiffs allege in their complaint that defendant Bone continues to offer for sale, through a fixed-price interactive commercial webstore hosted by eBay, goods bearing the Toytrackerz trademarks, after receiving notice and knowledge of the Toytrackerz' claims in them and after Toytrackerz filed trademark infringement notices which terminated his eBay auctions.

Unlike defendants Koehler and Kosowski, Plaintiffs make no allegations that defendant Bone posted any disparaging or defamatory comments on his website or other Internet venues about Plaintiffs or their products. Nor does their complaint allege any tortious action other than trademark infringement.

Many courts have found trademark infringement to be a tortious act for purposes of state long-arm statutes.[96] This Court similarly finds that trademark infringement can be considered a "tortious act" within the meaning of the Kansas long-arm statute.

---

[96]*See Licciardello v. Lovelady,* 544 F.3d 1280, 1283 (11th Cir. 2008) (holding that although the website was created in Tennessee, the Florida long-arm statute is satisfied if the alleged trademark infringement on the website caused injury in Florida)*; Energy Brands Inc. v. Spiritual Brands, Inc*., 571 F. Supp. 2d 458, 470-71 (S.D.N.Y. 2008) (trademark infringement can be a tort for the purpose of determining long-arm jurisdiction); *Nestle Prepared Foods Co. v. Pocket Foods Corp*., Civ. A. No. 04-cv-02533-MSK-MEH, 2007 WL 1058550, at *3 (D. Colo. Apr. 5, 2007) ("It is well-established that trademark infringement is a tortious act for purposes of state long-arm statutes."); *Enterprise Rent-A-Car Co. v. U-Haul Int'l, Inc.,* 327 F. Supp. 2d 1032, 1043 (E.D. Mo. 2004) ("trademark infringement is a tort, and the economic effects of infringement are felt where the trademark owner has its principal place of business"); *System Designs, Inc. v. New Customware Co., Inc.,* 248 F. Supp. 2d 1093, 1097 (D. Utah 2003) ("Trademark infringement is a tort.").

Plaintiffs cite the District of Utah trademark infringement case, *System Designs, Inc. v. New Customware Co., Inc.*,[97] in support of their argument that defendant Bone is subject to personal jurisdiction because of his intentional actions of infringing upon the trademarks of a Kansas company.   In *System Designs*, the court noted a strong argument for finding that the defendant had subjected itself to personal jurisdiction in the forum state because of alleged trademark infringement alone.[98]   It reasoned that:

> Trademarks are registered in a national database, accessible to anyone.   By registering a trademark with this database, an owner of a mark puts the world on notice – literally – that they have the rights to that mark. Not only does this establish a constructive notice as to the right to use the mark, it also establishes a constructive notice as to where the mark is registered.[99]

To avoid suit in the forum state, the defendant needed only to look up the trademark before it chose to use the mark.[100]   A search of the database would reveal that it was a registered trademark and would thus warn the defendant it might be subject to suit in the forum of the trademark owner for its unauthorized use.[101] The *System Designs* court ultimately found it unnecessary to create a *per se* rule regarding direct trademark infringement because the defendant had "something more" to establish jurisdiction.[102]   The defendant's knowing, open and continuous use of the plaintiff's trademark for three years, along with the nature of its website, demonstrated that the defendant

---

[97]248 F. Supp. 2d 1093 (D. Utah 2003).

[98]*Id.* at 1098.

[99]*Id.*

[100]*Id.* at 1098-99.

[101]*Id.* at 1099.

[102]*Id.*

intended to reach the plaintiff's potential customers in the forum.[103]

In this case, the Court finds that defendant Bone's actions of offering for sale products that allegedly infringe upon Toytrackerz' trademarks and displaying those trademarks on his website is not sufficient to establish minimum contacts necessary for personal jurisdiction.  The Court, like the *System Designs* court, declines to create a *per se* rule regarding direct trademark infringement. Instead, Plaintiffs must show there is "something more" to indicate that defendant Bone purposefully directed his activities to Kansas.[104]

As is clear under Tenth Circuit precedent, the mere allegation that an out-of-state defendant has committed business torts that have allegedly injured a resident of the forum "does not necessarily establish that the defendant possesses the constitutionally required minimum contacts."[105]  Without "something more" needed to establish minimum contacts with Kansas, Plaintiffs have not established that defendant Bone has the requisite minimum contacts with Kansas to support personal jurisdiction over him.

**(c)      Civil conspiracy theory of jurisdiction**

Plaintiffs also argue that the Court has jurisdiction over defendant Bone based upon a conspiracy with his co-defendants.  Under this theory of jurisdiction, if one conspirator commits acts in Kansas in furtherance of the conspiracy and that conspirator falls under the long-arm statute,

---

[103]*Id.*

[104]*See Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1011, 1021 (D. Kan. 2006) ("While a general posting to an Internet website is not sufficient to establish minimum contacts, courts may find personal jurisdiction appropriate where there is 'something more' to indicate that defendant purposefully directed activities to the forum state.") (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997)).

[105]*Far West*, 46 F.3d at 1077-80.

jurisdiction can be obtained as to all conspirators.[106]   In ascertaining the facts necessary to establish jurisdiction, the court looks only to the well-pled facts of the complaint, as distinguished from mere conclusory allegations.[107]   In order for the court to find personal jurisdiction based on a conspiracy theory, the plaintiff must offer more than "bare allegations" that a conspiracy existed, and must allege facts that would support a *prima facie* showing of a conspiracy.[108]

In this instance, however, the complaint asserts no specific claim of conspiracy.   Nor does it contain any specific allegations of a conspiracy between or among any of the defendants. Plaintiffs thus have not met their threshold burden of establishing personal jurisdiction over defendant Bone upon a conspiracy theory.

### C.   Traditional notions of fair play and substantial justice

Once it has been established that a defendant's actions created sufficient minimum contacts, the court must still consider whether the exercise of personal jurisdiction offends traditional notions of "fair play and substantial justice."[109]   This inquiry requires a determination of whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is "reasonable" in light of the circumstances surrounding the case.[110]   An interplay exists between the two components of the specific jurisdiction inquiry; depending on the strength of the defendant's

---

[106]*Merriman v. Crompton Corp.*, 282 Kan. 433, 464, 146 P.3d 162, 181 (2006).

[107]*Ten Mile Indus. Park*, 810 F.2d at 1524.

[108]*Melea,* 511 F.3d at 1069; *see also Baldridge v. McPike, Inc.*, 466 F.2d 65, 68 (10th Cir. 1972) ("Mere allegation of conspiracy, without some sort of prima facie factual showing of a conspiracy, cannot be the basis of personal jurisdiction of co-conspirators outside the territorial limits of the court.").

[109]*Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320).

[110]*OMI Holdings*, 149 F.3d at 1091.

34

contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry.[111]   The reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction.[112]   In determining whether the exercise of jurisdiction is reasonable, the court considers "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies."[113]   If these factors are strong, they may establish jurisdiction even though the minimum contacts are minor.[114]

### 1.    Burden on defendants Koehler and Kosowski in litigating in Kansas

With respect to the first factor, defendants Koehler and Kosowski reside respectively in Ohio and New York.   To defend a suit in Kansas will create a burden to them.   Modern transportation and communication, and in particular the implementation of electronic case filing, noticing, and teleconferences, have to some extent lessened the burden to out-of-state defendants.   This factor, however, weighs in favor of defendants Koehler and Kosowski.

### 2.    Kansas' interest in adjudicating the dispute

With respect to the second factor, the court considers the interest of Kansas in resolving the

---

[111]*Id.* at 1091-92 (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)).

[112]*Id.* at 1092 (citing *Ticketmaster-New York, Inc. v. Alioto,* 26 F.3d 201, 210 (1st Cir. 1994)).

[113]*Id.* at 1095 (citing *Asahi*, 480 U.S. at 113).

[114]*Id.*

dispute. The states have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors.[115] "The state's interest is also implicated where resolution of the dispute requires a general application of the forum state's laws."[116]  In this case, the Court finds that Kansas has a strong interest in adjudicating this controversy because the alleged injury was suffered by Kansas residents in the state of Kansas.[117]  Kansas also has a significant interest in resolving a dispute regarding trademarks owned by a Kansas company.  Kansas law, moreover, applies to the tort claims.  This factor weighs in favor of Plaintiffs.

### 3.    Plaintiffs' interest in convenient and effective relief

Under this factor, the court considers whether the plaintiff may receive convenient and effective relief in another forum.[118] This factor may weigh heavily in cases where the plaintiff's chances of recovery will be greatly diminished by forcing him or her to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit.[119]  With respect to this factor, the Court finds that Plaintiffs are unlikely to receive convenient and effective relief in another forum because defendants Koehler and Kosowski reside in different states.  This would likely force Plaintiffs to file separate actions in at least two separate forums to obtain relief.  This factor weighs in favor of Plaintiffs.

---

[115]*OMI Holdings*, 149 F.3d at 1096.

[116]*Id.*

[117]*Burger King*, 471 U.S. at 483-84.

[118]*Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1281 (10th Cir. 2005).

[119]*Id.*

### 4.      Interstate judicial system's interest in obtaining efficient resolution

With respect to the fourth factor, the Court evaluates whether Kansas would best further the interstate judicial system's interest in obtaining efficient resolution of controversies.  In other words, the court considers whether Kansas is the most efficient place to litigate the parties' dispute.[120]  In evaluating this factor, courts look at the location of witnesses, the location of the underlying wrong, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation.[121]   The first consideration has a neutral result.   The Court assumes that Plaintiffs will designate at least two witnesses and that defendants Koehler and Kowalski will designate themselves as witnesses.  The second consideration favors Plaintiffs because the alleged wrong occurred in Kansas.  The third consideration favors Plaintiffs.  Although two of their claims, trademark infringement and cybersquatting, are governed by federal statutes, the rest are governed by the law of Kansas because the alleged injuries occurred in Kansas.[122]   Finally, consideration of whether jurisdiction is necessary to prevent piecemeal litigation favors Plaintiffs.   If the Court does not exercise jurisdiction over defendants Koehler and Kosowski, Plaintiffs must file multiple actions in at least two separate forums.   In summary, the Court finds that the interstate judicial system's interest is best served by litigating the dispute in Kansas.

### 5.      Shared states' interest in furthering fundamental substantive social policies

The fifth factor of the reasonableness inquiry focuses on whether the exercise of personal

---

[120]*Id.*

[121]*Id.*

[122]*Kan. Mun. Gas Agency v. Vesta Energy Co.*, 840 F. S upp. 814, 822-23 (D. Kan. 1993) (in a tort case, the law of the state where the injury occurred should be applied).

jurisdiction by the forum affects the "substantive social policy interests of other states or foreign nations."[123]   The Court finds no facts suggesting that the exercise of personal jurisdiction in Kansas would affect the substantive social policy of any other state.   This factor weighs in favor of Plaintiffs.

After evaluating the relevant factors, the Court finds that exercising personal jurisdiction over defendants Koehler and Kosowski would not offend traditional notions of fair play and substantial justice.   Accordingly, the Court will not dismiss the action for lack of personal jurisdiction over defendants Koehler and Kosowski.   For reasons herein stated, it will, however, dismiss the action as to defendant Bone.

## IV.   Summary

By the factual allegations in their complaint and the exhibits submitted with the briefings of the parties, the Court finds for the reasons hereinabove stated that Plaintiffs have made a *prima facie* showing that this Court has personal jurisdiction in Kansas over defendants Koehler and Kosowski. Accordingly, the case will proceed for a determination of the claims against them.   Finding the facts sufficient to exercise jurisdiction, however, does not mean that the Court has made a finding as to how any of the claims may finally be adjudicated.   Who of the parties may prevail as to any of the claims remains to be decided ultimately upon the trial of this case and not upon resolution of the motions to dismiss.   The Court finds, however, that Plaintiffs have not made a *prima facie* showing adequate to assert personal jurisdiction over defendant Bone.   Accordingly, his motion to dismiss will be sustained.

**IT IS THEREFORE ORDERED** that the Motion by Defendant Koehler for Dismissal of

---

[123]*OMI Holdings*, 149 F.3d at 1097.

Plaintiffs' Complaint Due to Lack of Jurisdiction (doc. 9) and Motion by Defendant Kosowski for Dismissal of Plaintiffs' Complaint Due to Lack of Jurisdiction (doc. 18) are DENIED, as set forth herein.  The Court reminds Defendants Koehler and Kosowski that, pursuant to Fed. R. Civ. P. 12(a)(4)(A), their answers to the complaint are to be served within ten (10) days.

**IT IS FURTHER ORDERED** that the Motion by Defendant Bone for Dismissal of Plaintiffs' Complaint Due to Lack of Jurisdiction (doc. 15) is SUSTAINED.   This action and the claims asserted in the complaint against Defendant Robin Bone are dismissed for lack of personal jurisdiction over him.

Dated in Kansas City, Kansas on this 28th day of May, 2009.


s/ Gerald L. Rushfelt
Gerald L. Rushfelt
United States Magistrate Judge