IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TOYTRACKERZ LLC,
and NOAH C. COOP,

<table>
<tr><td></td><td>Plaintiffs,</td><td>Civil Action</td></tr>
<tr><td>v.</td><td></td><td>Case No. 08-2297-GLR</td></tr>
</table>

L. JILL KOEHLER,
et al.,

Defendants.

## MEMORANDUM AND ORDER

This matter is before the Court upon two motions:  Plaintiffs' Application for Preliminary Injunction (doc. 49), and Defendants' Motion for Attorney's Fees (doc. 89).  Pursuant to Fed. R. Civ. P. 65 and 15 U.S.C. § 1116(a), Plaintiffs by their motion seek to enjoin Defendants L. Jill Koehler and Michael Kosowski from using any trademarks and logos owned by Plaintiff Toytrackerz LLC on or in conjunction with any goods produced, advertised, or offered for sale. Defendants' Motion for Attorney's Fees seeks their attorney's fees in defending against the application for preliminary injunction. The parties have consented to jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  As more fully set forth below, the Court denies both motions.

I.      **Background**

Plaintiffs Toytrackerz LLC ("Toytrackerz") and Noah Coop filed this action on June 30, 2008.  Toytrackerz manufactures, packages, promotes, and offers for sale 1:6 scale western-style, collectible toy action figures and accessories via the Internet and trade shows in the Kansas area, as well as throughout the United States and abroad.  In the present action, Plaintiffs assert claims for

statutory trademark infringement and false advertising under the Lanham Act,[1] as well as common law trademark infringement and unfair competition, cybersquatting,[2] business defamation and injury to business reputation, cancellation of trademark, and invasion of privacy against defendants American Plastic Equipment, Inc., L. Jill Koehler dba Koehler Customs ("Koehler"), Tristan Koehler, Michael Kosowski dba Friends of Johnny ("Kosowski"), and Robin Bone dba Robin Bone Toys. The Court has dismissed defendant Tristan Koehler for failure to obtain service of process over him.[3] It has dismissed defendants American Plastic Equipment, Inc. and Robin Bone for lack of personal jurisdiction.[4] The only defendants remaining are Koehler and Kosowski.

Plaintiffs filed the instant Application for Preliminary Injunction on March 15, 2009. On March 31, 2009, they filed an Application for Ex Parte Temporary Restraining Order pursuant to Fed. R. Civ. P. 65(b)(1).[5] On April 7, 2009, the Court heard oral arguments upon that application. It denied a restraining order upon procedural grounds, finding it inappropriate when Defendants had appeared and Plaintiffs had already filed a motion for preliminary injunction.

On June 17, 2009, the Court conducted an evidentiary hearing and heard oral arguments upon Plaintiffs' Application for Preliminary Injunction. The parties appeared through their respective counsel, and Plaintiff Toytrackerz also appeared by its corporate representative, Terry Coop.

---

[1] 15 U.S.C. §§ 1051 *et seq.*

[2] 15 U.S.C. § 1125(d).

[3] See Order of Dismissal as to Defendant Tristan Koehler (doc. 71).

[4] *See* docs. 73 and 80.

[5] Doc. 53.

II.    **Findings of Fact**

Based on the oral argument and evidence presented at the hearing on June 17, 2009 and the written briefs and exhibits, the Court makes the following findings of fact:

Plaintiff Toytrackerz is a family-owned limited liability company.[6]  Noah Coop and Terri Coop are the two managing members of Toytrackerz.[7]

Toytrackerz has filed and obtained trademark registrations issued by the United States Patent and Trademark Office ("USPTO") for the stylized red and black logo "Johnny West Adventure,"[8] the stylized black and orange logo "Best of the West,"[9] and the trademark "Jed Gibson."[10]  The stylized logo "Johnny West Adventure" was registered on November 28, 2006, under Reg. No. 3,178,499.[11]  "Best of the West" was registered January 9, 2007, under Reg. No. 3,197,601.[12]  "Jed Gibson" was registered on April 15, 2008, under Reg. No. 3,413,412.[13]  Toytrackerz has filed an application for registration for the character mark "Circle X Ranch."[14]

On January 10, 2006, Toytrackerz filed an intent-to-use application (Application Serial No.

---

[6]Prelim. Inj. Hr'g Tr. 43:13-16, June 17, 2009.

[7]Prelim. Inj. Hr'g Tr. 13:10-14, 41:15-19.

[8]Prelim. Inj. Hr'g Tr. 86:5-15; Ex. 1 to Pls.' App. for Prelim. Inj. (doc. 49-2).

[9]Prelim. Inj. Hr'g Tr. 86:5-15; Ex. 2 to Pls.' App. for Prelim. Inj. (doc. 49-3).

[10]Prelim. Inj. Hr'g Tr. 106:7-14; Ex. 3 to Pls.' App. for Prelim. Inj. (doc. 49-4).

[11]Ex. 1 to Pls.' App. for Prelim. Inj. (doc. 49-2).

[12]Ex. 2 to Pls.' App. for Prelim. Inj. (doc. 49-3).

[13]Ex. 3 to Pls.' App. for Prelim. Inj. (doc. 49-4).

[14]Prelim. Inj. Hr'g Tr. 86:5-13, 87:1-3.

78788519) for the stylistic logo for Marx Toys, described as a circle crossed with an "X" with the words "MARX TOYS" in its center ("Marx Toys logo").[15] This application for "action figures and accessories therefor" is currently pending before the USPTO.[16] On March 31, 2009, the Trademark Trial and Appeal Board ("TTAB") dismissed a motion by Defendant Koehler to cancel the Marx Toys trademark for pleading deficiencies, but granted her leave to file an amended petition to cancel.[17] Upon the filing of the amended petition for cancellation, the TTAB suspended its proceedings, pending resolution of the instant civil action.[18]

On July 25, 2006, Toytrackerz filed an intent-to-use application with the USPTO (Application Serial No. 78936679) for the figural logo "Magic Marxie," which displays an elf with the Circle X logo on his body. The USPTO issued a Notice of Allowance to Toytrackerz for the figural logo "Magic Marxie" on September 18, 2007.[19] A statement of use was filed for the Marx Toys logo on March 20, 2009, in regard to "miniature figures."[20] Toytrackerz' "Magic Marxie" figural logo was registered on May 12, 2009, under Reg. No. 3,621,071.[21]

Upon its belief that they had been abandoned, Toytrackerz adopted the Marx Toys and Magic

---

[15]Prelim. Inj. Hr'g Tr. 86:21-23, 87:4-6; Ex. 14 to Def. Koehler's Resp. to Pls.' Mot. for Prelim. Inj. (doc. 57-28).

[16]Ex. 14 to Def. Koehler's Resp. to Pls.' Mot. for Prelim. Inj. (doc. 57-28); Ex. 3 to Pls.' Reply to Def. Kosowski's Resp. (doc. 63-4), p. 5 n.1.

[17]Ex. 3 to Pls.' Reply to Def. Kosowski's Resp. (doc. 63-4), p. 6.

[18]*Id.* at 13.

[19]Prelim. Inj. Hr'g Tr. 86:23-25; Ex. 4 to Pls.' App. for Prelim. Inj. (doc. 49-5).

[20]Ex. 3 to Pls.' Reply to Def. Kosowski's Resp. (doc. 63-4), p. 5 n.1.

[21]Ex. 1 to Supp. Br. on App. for Prelim. Inj. (doc. 76-3).

Marxie logos that were originally put into commerce by a now defunct toy company, Louis Marx and Company.[22]  Terri Coop testified at the hearing that Toytrackerz' first date "use in commerce" for both Marx Toys logos was "somewhere in the middle of 2005."[23]

Defendant Koehler operates the commercial website www.koehlercustoms.com.[24] On March 15, 2009, Terri Coop was monitoring this website and discovered that Defendant Koehler was thereon selling items that Koehler claimed to be "Marx items."[25]  In approximately March 2009, Defendant Koehler began offering for sale new, plastic reproductions of one-sixth scale toy horses that bear the Marx logo embedded in their left rear flank.[26]  These horses are offered for sale in packaging dated 2009.[27]  She offered these horses for sale on her website and listed them on eBay.[28]

Displayed on the Koehler Customs website some time in early 2009 was the logo depicted as a circle with an "X" through the words "MARX TOYS" surrounded by the words "OFFICIALLY LICENSED PRODUCT."[29]  Underneath the logo appears the words "Under license of American Plastic Equipment Inc., 2009."[30]  The website further contains the statement "I have a contract with

_____

[22]Prelim. Inj. Hr'g Tr. 16:10-16.

[23]Prelim. Inj. Hr'g Tr. 87:8-11.

[24]Prelim. Inj. Hr'g Tr. 96:15-17.

[25]Prelim. Inj. Hr'g Tr. 96:17-20.

[26]Prelim. Inj. Hr'g Tr. 35:13-21, 98:22-25.

[27]Prelim. Inj. Hr'g Tr. 99:1-10.

[28]Prelim. Inj. Hr'g Tr. 37:14-17.

[29]Ex. 5 to Pls.' App. for Prelim. Inj. (doc. 49-6).

[30]*Id.*

American Plastic Equipment, Inc., the rightful owner of the Marx trademarks and copyrights, and I pay royalties on every item of approved Marx reproduction merchandise I sell."[31]  Throughout the website the horses offered for sale are referred to as "Marx items," "Marx molds," "Marx horses," and "approved Marx reproduction merchandise."[32]

Plaintiffs submitted no evidence as to Defendant Kosowski's website or activities at the hearing or in the exhibits and briefing to the application for preliminary injunction.

## III.    Conclusions of Law

### A.    Preliminary Injunction Standard

To prevail on a motion for a preliminary injunction, the movant must establish that four equitable factors weigh in its favor: (1) it is substantially likely to succeed on the merits; (2) it will suffer irreparable injury if the injunction is denied; (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest.[33]  The key issue in determining whether a preliminary injunction should issue on a trademark infringement claim is whether the plaintiff is substantially likely to prevail on the merits.[34] "Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and

---

[31]*Id.*

[32]*Id.*

[33]*Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009).

[34]*Deltona Transformer Corp. v. Wal-Mart Stores, Inc.*, 115 F. Supp. 2d 1361, 1365 (M.D. Fla. 2000).

unequivocal."[35] The Supreme Court has observed "that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear *showing*, carries the burden of persuasion."[36]  The Supreme Court has further indicated that the "limited purpose" of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held."[37]  Courts should be hesitant to grant the extraordinary interim relief of a preliminary injunction in any particular case, but especially so when such an injunction would alter the status quo prior to a trial on the merits.[38]

Section 34 of the Lanham Act, codified as 15 U.S.C. § 1116(a), expressly gives courts vested with jurisdiction the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title."[39]  "An injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries

---

[35]*Beltronics,* 562 F.3d at 1070 (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)). *See also United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888-89 (10th Cir. 1989) (stating that a preliminary injunction "constitutes drastic relief to be provided with caution ... [and] should be granted only in cases where the necessity for it is clearly established."); *Gen. Motors Corp. v. Urban Gorilla, LLC,* 500 F.3d 1222, 1226 (10th Cir. 2007) ("In general, a preliminary injunction is an extraordinary remedy; it is the exception rather than the rule.") (quotation omitted).

[36]*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (quoting 11A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2948, ¶ 129-130 (2d ed. 1995) (emphasis added by Supreme Court).

[37]*Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

[38]*O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004) (en banc, per curiam), *aff'd*, 546 U.S. 418 (2006).

[39]15 U.S.C. § 1116(a).

otherwise irremediable.'"[40]

### B.     Request for Preliminary Injunction Against Defendant Koehler

Plaintiffs request that the Court enjoin Defendants Koehler and Kosowski from using trademarks and logos owned by Toytrackerz, and any related and/or derivative marks.  The Court will first address the preliminary injunction sought against Defendant Koehler.

### 1.     Substantial Likelihood of Success on the Merits

Plaintiffs assert claims of trademark infringement and false advertising under the Lanham Act, 15 U.S.C. §§ 1114(1)(a) and 1125(a), and trademark infringement and unfair competition under common law.  Section 32 of the Lanham Act prohibits "the [unauthorized] use in commerce [of another's trademark] in connection with the sale, offering for sale, distribution, or advertising of any goods or services . . . [if] such use is likely to cause confusion, or to cause mistake, or to deceive."[41] Section 43(a) prohibits the unauthorized use "in commerce" and "in connection with any goods or services" of "any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the . . . origin, sponsorship, or approval of [the unauthorized user's] goods, services, or commercial activities by another person."[42]

The Tenth Circuit has noted that the standard for trademark infringement under the Lanham Act is similar to the standard for common law trademark infringement.[43]  To succeed on these claims

---

[40]*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)).

[41]15 U.S.C. § 1114(1)(a).

[42]15 U.S.C. § 1125(a).

[43]*Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004).  *See also Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006) ("claim of trademark infringement . . . requires a trademark holder to demonstrate ownership of a valid mark (i.e., a

for trademark infringement, "a plaintiff must establish a protectable interest in its mark, the defendant's use of that mark in commerce, and the likelihood of consumer confusion."[44]

### a.    Protectable interest in the marks

To seek redress under either federal or Kansas law for trademark infringement and the other trademark-related claims, the claimant must be able to prove ownership of, or a valid, protectable interest in, the trademark.[45]  Similarly, to prevail on an unfair competition claim under the Lanham Act, a plaintiff must establish a protectable interest in the trademark.[46]

Plaintiffs thus must first establish that Toytrackerz has a protectable interest in the trademarks at issue.[47]  Rights to a trademark are acquired by use and not by registration.[48] Unlike the registration of a patent, a trademark registration of itself does not create the underlying right to exclude.[49]  A certificate of registration, however, is "prima facie evidence of the validity of the

---

protectable interest)"); *A & H Sportswear v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) (to recover on federal trademark infringement and related trademark claims, plaintiff must show that it possesses a valid, protectable trademark).

[44] *Donchez,* 392 F.3d at 1219.

[45] *Id.*

[46] *Utah Lighthouse Ministry, Inc. v. Discovery Computing, Inc.*, 506 F. Supp. 2d 889, 895 (D. Utah 2007) (citing *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001)).

[47] *See Packerware Corp. v. Corning Consumer Prods. Co.*, 895 F. Supp. 1438, 1447 (D. Kan. 1995) ("Plaintiff must first establish that its marks are valid and protectable." ).

[48] *See Playboy Enters., Inc. v. Netscape Commc'ns Corp.,* 55 F. Supp. 2d 1070, 1079 n.3 (C.D. Cal. 1999) (citing *In re ECCS Inc.*, 94 F.3d 1578, 1579 (Fed. Cir. 1996) (trademarks are acquired by use, not registration)).  *See also* 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31:65 (4th ed. 2009) ("A trademark is not created by registration.").

[49] *San Juan Prods., Inc. v. San Juan Pools of Kan., Inc.*, 849 F.2d 468, 474 (10th Cir. 1988); 6 McCarthy, *supra* note 48, § 31:65.

registered mark . . . and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods and services specified in the certificate."[50] Thus, registration creates a presumption of the registrant's ownership of the mark, subject to any applicable legal or equitable defenses or defects.[51] If the trademark is not registered at the time of the alleged infringement, however, the party claiming rights in the trademark must show that the mark is protectable.[52]

      **(1)**      **"Johnny West Adventure," "Best of the West," and "Jed Gibson"**

Based upon the evidence presented in the motions and briefing and at the evidentiary hearing,  the Court finds that Plaintiffs have established that Toytrackerz, at the time it filed this action, had obtained trademark registrations issued by the USPTO for the following marks: (1) the stylized red and black logo "Johnny West Adventure,"[53] (2) the stylized black and orange logo "Best of the West,"[54] and (3) the trademark "Jed Gibson."[55]  As the USPTO has issued certificates of registration for these three marks, Plaintiffs are thereby entitled to a presumption of Toytrackerz' ownership of the marks, subject to any applicable legal or equitable defenses or defects under 15

---

[50]15 U.S.C. § 1057(c).

[51]15 U.S.C. § 1115(a).

[52]*See Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research,* 527 F.3d 1045, 1050 (10th Cir. 2008) (holding that because the trademark was not registered at the time of the creation of the website where is was allegedly displayed, the party claiming ownership of the trademark must show the trademark is protectable).

[53]Prelim. Inj. Hr'g Tr. 86:5-15; Ex. 1 to Pls.' App. for Prelim. Inj. (doc. 49-2).

[54]Prelim. Inj. Hr'g Tr. 86:5-15; Ex. 2 to Pls.' App. for Prelim. Inj. (doc. 49-3).

[55]Prelim. Inj. Hr'g Tr. 106:7-14; Ex. 3 to Pls.' App. for Prelim. Inj. (doc. 49-4).

U.S.C. § 1115(a).  Defendant Koehler would thus bear the burden of rebutting the presumption of validity of Toytrackerz' ownership of these trademarks.[56]

Registration of a trademark does not preclude another person from proving a defense or defect that he might have asserted if the mark had not been registered.[57]  Defendant Koehler argues that Toytrackerz fraudulently obtained these trademark registrations because it knew in 2005 that these trademarks were still being used and had not in fact been abandoned.  Defendants point to a consignment agreement, executed on March 31, 2005, between Toytrackerz and Marx Toys & Entertainment Corp.[58]  In the Contract for Services, Toytrackerz agreed to make responsible efforts to sell certain Marx toy figure merchandise, and in exchange, Toytrackerz would reimburse Marx Toys & Entertainment Corp. a certain amount per figure plus a percentage of net proceeds.[59]  Plaintiffs argue that the contract was for warehouse "dead stock" and did not constitute "use in commerce" for purposes of the Lanham Act.  While this raises an issue as to the validity of Toytrackerz' trademark registrations, the Court need not address this issue in making its determination on the Application for Preliminary Injunction.  As discussed below, Plaintiffs have made no showing of use of these specific trademarks or logos by Defendant Koehler.

### (2)    "Magic Marxie"

As to the figural logo "Magic Marxie," the Court finds that Plaintiffs have shown that, at the

---

[56]*See Blue & White Food Prods. Corp. v. Shamir Food Indus., Ltd.*, 350 F. Supp. 2d 514, 518 (S.D.N.Y. 2004) (holding that when party moving for preliminary injunction has obtained a trademark registration, the burden shifts to party opposing the motion to demonstrate the trademark is not entitled to protection).

[57]15 U.S.C. § 1115(a).

[58]Prelim. Inj. Hr'g Def. Ex. 9.

[59]*Id.*

11

time of the filing of the action and application for preliminary injunction, the USPTO had issued Toytrackerz a Notice of Allowance for this logo.  But Toytrackerz had not yet filed its statement of use with the USPTO.  Nor had a certificate of registration yet been issued.  Toytrackerz filed an intent-to-use application pursuant to 15 U.S.C. § 1051(b)[60] on July 25, 2006.[61]  It received a Notice of Allowance for the figural logo "Magic Marxie" on September 18, 2007, and filed a statement of use for "miniature figures" on March 20, 2009.[62]  The USPTO later issued a certificate of registration on May 12, 2009.[63]  Thus, at the time Toytrackerz filed its application for preliminary injunction on March 15, 2009, it had not yet filed its statement of use and thus its trademark registration application was still pending before the USPTO.

Because Toytrackerz had not yet obtained a registration for "Magic Marxie" when it filed its application for preliminary injunction, it is not entitled it to any statutory presumption of ownership, validity, or the exclusive right to use the mark in commerce.[64]  No rights are conferred

---

[60]This provision of the statute permits an applicant not currently using a trademark to file an application for its registration by alleging a "bona fide intention to use the mark in commerce."  15 U.S.C. § 1051(b)(3)(B).

[61]Ex. 3 to Pls.' Reply to Def. Kosowski's Resp. (doc. 63-4), p. 5 n.1.

[62]*Id.*

[63]Ex. 1 to Supp. Br. on App. for Prelim. Inj. (doc. 76-3).

[64]*See Pollution Denim & Co. v. Pollution Clothing Co.*, 547 F. Supp. 2d 1132, 1139 (C.D. Cal. 2007); *Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 976 (C.D. Cal. 2002) (citing *Dalton Enters., Inc. v. Copeland Coating Co.*, No. CV 90-320, 1991 WL 117698, at *14 (N.D.N. Y. June 18, 1991)); *see also Emergency One, Inc. v. Am. Fire Eagle Engine Co., Inc.*, 332 F.3d 264, 267 (4th Cir. 2003) (priority is determined by the first actual use of the trademark in a genuine commercial transaction when more than one user claims the exclusive right to use an unregistered mark); 2 McCarthy, *supra* note 48*, § 16:2 ("If party Alpha files an [intent-to-use] application to register and has not yet used the designation as a mark and thus not yet obtained its registration, then Alpha has as yet no trademark rights to assert in court against party Gamma, who began use of a similar mark after the date of Alpha's application").

by the mere filing of a federal trademark application, and the applicant is entitled to no statutory presumption of entitlement until the registration issues.[65]  Without the presumption, Plaintiffs must otherwise establish that Toytrackerz possesses a valid, protectable rights in the "Magic Marxie" logo.[66]

Plaintiffs may establish rights by actual use of the trademark.  They have presented no evidence, however, that Toytrackerz has used this mark in commerce or any credible evidence as to the date of Toytrackerz' first use of the mark.  Terri Coop testified at the hearing that Toytrackerz' first date of "use in commerce" for both Marx Toys logos was "somewhere in the middle of 2005." But this testimony is inconsistent with Toytrackerz' filing an intent-to-use application on July 25, 2006, suggesting that Toytrackerz's first use of the mark in commerce was not in 2005.  Toytrackerz has not otherwise presented any evidence that it was using the mark in commerce at the time it filed this action.

The Court recognizes that 15 U.S.C. § 1057(c) provides that ". . . the filing of the application to register such mark shall constitute constructive use of the mark, conferring a right of priority, . . . on or in connection with goods or services specified in the registration against any other person" except for prior users and other applicants.  These rights, however, are "[c]ontingent on the registration of a mark on the principal register."[67]   An applicant has "merely a contingent and

---

[65]*S Indus., Inc. v. Diamond Multimedia Sys.*, 991 F. Supp. 1012, 1019 (N.D. Ill. 1998) (citing *Hydro-Dynamics, Inc. v. George Putnam & Co., Inc.*, 811 F.2d 1470, 1472 (Fed. Cir. 1987)).

[66]*Donchez,* 392 F.3d at 1219.  *See also Glow Indus.,* 252 F. Supp. 2d at 980 ("Because neither party presently holds a registration for [the mark at issue], neither can take advantage of the presumption of protectability provided by trademark registration. [Plaintiff] thus must establish that it is the senior user of [the mark] in connection with [the good sold] before it can prevail in its infringement action.").

[67]15 U.S.C. § 1057(c).

13

conditional priority."[68] Thus, Toytrackerz' right of priority in the mark does not arise until such time as the mark is registered. Because the Toytrackerz' application for the figural logo "Magic Marxie" was still pending at the time Plaintiffs filed their motion for preliminary injunction, the right of priority conferred by 15 U.S.C. § 1057 does not apply. As an intent-to-use applicant, furthermore, Toytrackerz cannot invoke the Lanham Act right of priority as a basis for an injunction.[69]

Based on the foregoing, the Court finds that Plaintiffs have failed to establish that Toytrackerz has a protectable interest in the figural logo "Magic Marxie." As a result, Plaintiffs have failed to show likelihood of success on the merits with respect this mark.

### (3)    "Marx toys"

Finally, with respect to the unregistered "Marx toys" mark and associated stylistic logo, the Court concludes that Plaintiffs have failed to demonstrate that Toytrackerz has a protectable ownership interest in either "Marx Toys" or any associated stylistic logo. While Toytrackerz may have a pending intent-to-use trademark application for the Marx Toys stylistic logo, this does not entitle it to a statutory presumption of ownership, validity, or the exclusive right to use the mark in commerce.[70] Plaintiffs must prove, consequently, that Toytrackerz possesses a valid, protectable interest in the "Marx toys" logo.[71] They have not shown by competent evidence that Toytrackerz

---

[68]5 McCarthy, *supra* note 48, § 26:38.

[69]3 McCarthy, *supra* note 48, § 19:26. *See also Market Corner Realty Assocs., LLC. v. CGM-GH LLC*, 71 U.S.P.Q.2d 1061, 2004 WL 1077918 (S.D. N.Y. 2004) (a pending intent-to-use application cannot invoke the Lanham Act right of priority as a basis for an injunction); *Talk To Me Prods. v. Larami Corp.*, 804 F. Supp. 555, 559-60 (S.D.N.Y. 1992), *aff'd*, 992 F.2d 469 (2d Cir. 1993) (right or priority from an intent-to-use application for trademark registration only triggered upon registration).

[70]*See Pollution Denim*, 547 F. Supp. 2d at 1139.

[71]*Glow Indus.*, 252 F. Supp. 2d at 980.

has a protectable interest in "Marx toys" or any associated stylistic logo.  As a result, Plaintiffs have failed to show likelihood of success on the merits with respect to this mark.

## b.    Unauthorized use

The Court next must determine whether Plaintiffs presented sufficient evidence of unauthorized "use" of any of Toytrackerz' protectable trademarks by Defendant Koehler.  To establish a violation under 15 U.S.C. § 1114(1)(a), Plaintiffs must make a showing that Defendant Koehler used Toytrackerz' registered marks in commerce "in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.[72]   To establish a violation of 15 U.S.C. § 1125(a), Plaintiffs must make a showing that Defendant Koehler used in commerce Toytrackerz' trademarks "in connection with any goods or services, or any container for goods."

The Court has reviewed Exhibit 5 to the Application for Preliminary Injunction.  On its face the exhibit appears to be a printout from Defendant Koehler's website, although there is no authenticating affidavit or other evidence to support that assumption.  The Court finds its authenticity uncertain as a mere printout from a website, in the absence of further foundation or authentication as to its origin.[73]   Printouts from non-government websites are not self-authenticating.[74]   To authenticate printouts from a website, the proponent must present evidence

---

[72]15 U.S.C. § 1114(1)(a).

[73]*See, e.g., In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 769, 782 (C.D. Cal. 2004) ("Printouts from a web site do not bear the indicia of reliability demanded for other self-authenticating documents under Fed. R. Evid. 902.  To be authenticated, some statement or affidavit from someone with knowledge is required[.]").

[74]*Id.; Sun Prot. Factory, Inc. v. Tender Corp.*, No. 604CV732ORL19KRS, 2005 WL 2484710, at *6 n.4 (M.D. Fla. Oct. 07, 2005).

from a witness with personal knowledge of the website at issue stating that the printout accurately reflects the content of the website and the image of the page on the computer at which the printout was made.[75]

Plaintiffs have not met the requirements for authentication of the website printout. In order to satisfy the requirement of Fed. R. Evid. 901, i.e. to show that the printouts from Defendant Koehler's website, www.koehlercustomers.com, are accurate representations of her website, they must provide a statement or affidavit from someone with personal knowledge of the contents of the website "sufficient to support a finding that the matter in question is what its proponent claims."[76] While Plaintiffs' Application does refer to and identify the exhibit as the website maintained by Defendant Koehler, it fails to identify who retrieved the website printout, when and how the pages were printed, or on what basis the printouts accurately reflect the contents of the website on a certain date. Defendant Koehler has not specifically asserted the issue of authentication against the exhibit. Upon a motion for preliminary injunction, nevertheless, the Court gives little weight to the exhibit for lack of foundation or authentication to show its origin. Plaintiffs merely attached the printout as Exhibit 5 to their supporting memorandum. They made no reference to it at the evidentiary hearing.

Were the Court to give full weight to Exhibit 5, Plaintiffs nevertheless have failed to establish that Defendant Koehler was using trademarks registered to Toytrackerz. Nowhere on the

---

[75]*Nightlight Sys., Inc. v. Nitelites Franchise Sys., Inc.*, 2007 WL 4563875, at *5-6 (N.D. Ga. May 11, 2007) ("In addition to a witness with personal knowledge of the web page at issue, to authenticate a printout from a web page, the proponent must present evidence from a percipient witness stating that the printout accurately reflects the content of the page and the image of the page on the computer at which the printout was made.").

[76]Fed. R. Evid. 901(a).

website pages appear any indication that Defendant Koehler is offering for sale products using Toytrackerz' stylized red and black logo "Johnny West Adventure," the trademark "Jed Gibson," or the figural logo "Magic Marxie." There does appear to be an image of a General Custer action figure in a box with the words "Best of the West." Yet there is no indication whether this item is being offered for sale or is simply an artistic representation on the website. If the intent is to offer it for sale, the Court nevertheless finds no indication whether the item is vintage Marx or indeed a new reproduction.

Throughout the Koehler Custom's website, toy horses are offered for sale and are referred to as "Marx items," "Marx molds," "Marx horses," and "approved Marx reproduction merchandise." As already noted, however, Plaintiffs have not established that Toytrackerz has yet obtained a protectable trademark in those Marx references.

The Court next looks to the testimony of Terri Coop to determine whether Plaintiffs have sufficiently established that Defendant Koehler is using any of Toytrackerz' trademarks. Ms. Coop testified at the hearing that on March 15, 2009, she discovered that Defendant Koehler's website was displaying and offering for sale "Marx items."[77] Ms. Coop further testified that in approximately March 2009, Defendant Koehler began offering for sale one-sixth scale toy horses that bear a Marx logo embedded in their left rear flanks.[78] She offered these horses for sale on her website and listed them on eBay.[79] As already noted, however, Plaintiffs have not established that Toytrackerz had yet obtained a protectable trademark in the referenced Marx logo at the time it filed its Application for

---

[77]Prelim. Inj. Hr'g Tr. 96:17-20.

[78]Prelim. Inj. Hr'g Tr. 35:13-21, 98:22-25.

[79]Prelim. Inj. Hr'g Tr. 37:14-17.

Preliminary Injunction.

From this scant showing, the Court cannot conclude that Plaintiffs have established that Defendant Koehler is using in commerce any protectable Toytrackerz' trademarks "in connection with the sale, offering for sale, distribution, or advertising of any goods or services"[80] or "in connection with any goods or services, or any container for goods."[81] Plaintiffs have failed to meet their burden to show a substantial likelihood of succeeding on the merits of their claims. This factor weighs against Plaintiffs.

## 2.    Irreparable Harm

The second equitable factor Plaintiffs must establish to prevail on a motion for a preliminary injunction is that they will suffer irreparable injury, if the injunction is denied. For purposes of a preliminary injunction, a presumption of irreparable injury or harm is presumed upon showing a trademark infringement.[82] The Court finds the presumption is not triggered in this case, because Plaintiffs have not shown trademark infringement by Defendant Koehler. Upon review of the testimony and briefing, furthermore, the Court concludes that the evidence presented does not establish that Plaintiffs will suffer irreparable injury by denial of a preliminary injunction. Ms. Coop testified she had never seen Defendant Koehler sell anything.[83] She had only seen her listing items on eBay for sale, claiming that she was an authorized to use the Marx trademarks.[84]

---

[80]15 U.S.C. § 1114(1)(a).

[81]15 U.S.C. § 1125(a).

[82]*Paramount Pictures Corp. v. Video Broad. Sys., Inc.*, 724 F. Supp. 808, 822 (D. Kan. 1989).

[83]Prelim. Inj. Hr'g Tr. 37:8-17.

[84]*Id.*

18

### 3.    Balance of Harm

The third factor for the court to examine upon a motion for preliminary injunction is whether the injury to the plaintiffs outweighs the harm which granting the injunctive relief would inflict on the defendants.[85]   Based upon the evidence present in conjunction with the filing of the Application for Preliminary Injunction, Plaintiffs have not shown that Defendant Koehler has infringed upon any protectable Toytrackerz trademark or logo.   Thus, enjoining Defendant Koehler from offering for sale horses on her website, when Plaintiff has not established that it owns all rights to use the "Marx" name and logo, would result in more harm to Defendant Koehler than to Plaintiffs.   On balance, the Court finds that the harm to Defendant Koehler as a result of the injunction outweighs the allegedly threatened injury to Plaintiffs.

### 4.    Public Interest

The final factor is whether the injunction would be adverse to the public interest.  One of the primary purposes of the Lanham Act is to guard against consumer deception regarding the source of goods and services.[86]  In trademark cases, public interest is "most often a synonym for the right of the public not to be deceived or confused."[87]  Protection of trademarks  fosters competition and product quality by securing to the trademark owner the benefits of a good reputation, and it benefits the consumer by preventing confusion about the source of products, and by instilling in consumers the confidence that inferior goods are not being passed off by the use of a familiar trademark.[88]

---

[85]*Packerware Corp.*, 895 F. Supp. at 1453.

[86]*Prime Media, Inc. v. Primedia, Inc.*, 33 F. Supp. 2d 932, 941 (D. Kan. 1998).

[87]*Id.* (citing *Opticians Ass'n v. Indep. Opticians,* 920 F.2d 187, 197 (3d Cir. 1990)).

[88]*First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 101 F.3d 645, 650 (10th Cir. 1996).

Infringement and dilution of trademarks are inherently contrary to the public interest.[89]  These goals are only served, however, if the plaintiff has shown by competent evidence that the defendant has actually infringed upon its valid, protectable trademarks.  That is not the case here.  The Court finds that the public interest is best served by denial of the requested injunction.

### C.      Request for Preliminary Injunction Against Defendant Kosowski

Plaintiffs have submitted no adequate evidence as to the website or activities of Defendant Kosowski.  Without such evidence in support of their application, the Court finds that Plaintiffs have failed to establish that they are substantially likely to succeed on the merits of any of their claims against Defendant Kosowski or they will suffer irreparable injury.   Accordingly, the Court denies the motion for preliminary injunction as to him.

### D.    Summary.

Given the clear statements by both the Supreme Court and the Tenth Circuit Court of Appeals, emphasizing that a preliminary injunction is an extraordinary and drastic remedy and that the courts should be hesitant in granting such relief, this Court finds from the evidence that Plaintiffs have not met their burden against either of the Defendants.   The Court therefore denies their Application for Preliminary Injunction.

### III.    Defendants' Motion for Attorney's Fees (doc. 89)

Defendants have filed a Motion for Attorney's Fees.  They request that the Court award them reasonable attorney's fees of $2,500 for defending against the motion for preliminary injunction. The Court finds that Defendants have failed to present any grounds for recovering their attorney's fees

---

[89]*See Autoskill Inc. v. Nat'l Educ. Support Sys.*, 994 F.2d 1476, 1499 (10th Cir. 1993) ("In copyright cases, we think [the public interest] factor normally weighs in favor of the issuance of an injunction because the public interest is the interest in upholding copyrights protections.").

based on their successfully defending against Plaintiffs' Application for Preliminary Injunction. Their successful defense against Plaintiffs' Application for Preliminary Injunction does not confer upon them the status as a "prevailing party" under 15 U.S.C. § 1117.[90] The motion is denied.

IT IS THEREFORE ORDERED that Plaintiffs' Application for Preliminary Injunction (doc. 49) is denied, as set forth herein.

IT IS FURTHER ORDERED that Defendants' Motion for Attorney's Fees (doc. 89) is denied.

Dated in Kansas City, Kansas on this 21st day of August, 2009.

s/ Gerald L. Rushfelt
Gerald L. Rushfelt
United States Magistrate Judge

---

[90]*See* 15 U.S.C. § 1117 ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.").

21