IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TOYTRACKERZ LLC and
NOAH COOP,

        Plaintiffs,                                      Civil Action

v.                                                      No. 08-2297-GLR

JILL KOEHLER,

        Defendant.

## MEMORANDUM AND ORDER

Pending before the Court are the following four motions: two motions filed by Plaintiff Toytrackerz LLC, each entitled Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF Nos. 107 and 108), a Motion for Partial Dismissal for Lack of Subject Matter Jurisdiction (ECF No. 112) filed by Plaintiffs, and Defendant Jill Koehler's Application to Amend Pretrial Order (ECF No. 115). Plaintiff Toytrackerz LLC ("Toytrackerz") requests dismissal of the counterclaim of Defendant Jill Koehler ("Koehler") for trademark cancellation and opposition, pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject-matter jurisdiction. In response, Koehler has moved to amend the pretrial order to include a claim for damages under 15 U.S.C. § 1120 for alleged fraudulent registration of the trademarks. The parties have consented to jurisdiction by a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). For the reasons set forth herein, the Court grants the motions to dismiss and denies the motion to amend the pretrial order.

**I.    Factual Background**

Toytrackerz is a family-owned, Kansas limited liability company whose managing members are Noah Coop and Terri Coop. It manufactures, packages, promotes, and offers for sale 1:6 scale western-style, collectible toy action figures and accessories via the Internet and trade shows in

Kansas, as well as throughout the United States and abroad. Toytrackerz claims to use and have valid protected rights in the trademarks "Marx," "Johnny West," "Johnny West Adventure," "Fort Apache Fighters," "Circle X Ranch," "Best of the West," "Jed Gibson," "Magic Marxie" [figural logo], and "Marxman."

In this action Plaintiffs asserted claims for statutory trademark infringement and false advertising under the Lanham Act,[1] for common law trademark infringement and unfair competition, cybersquatting, business defamation and injury to business reputation, cancellation of trademark, and invasion of privacy against five defendants: American Plastic Equipment, Inc. ("American Plastic"), L. Jill Koehler d/b/a Koehler Customs, Tristan Koehler, Michael Kosowski d/b/a Friends of Johnny ("Kosowski"), and Robin Bone d/b/a Robin Bone Toys.

Defendant Jill Koehler, doing business as Koehler Customs, owns a home-based business that creates and markets custom action figures, accessories, and box/manual sets. She alleges that she commenced business in June 2004, creating custom boxes for vintage 1:6 scale action figures in the Marx/Johnny West toy line. She claims that from June through August 2004 she began to create custom boxes for custom Marx figures, some of which bore the Marx trademark. She claims to have used a number of other trademarks in interstate and international commerce in the course of her business since June 2004. Specifically she alleges that she began to use the "Best of the West" trademark in February 2005. In June 2005 Toytrackerz applied to register this trademark with the United States Patent and Trademark Office ("USPTO"), which granted registration in January 2007. Koehler alleges she began to use the trademark "Johnny West Adventure" in January 2005, whereas Toytrackerz applied for registration in June 2006 and was granted registration in January

---

[1] 15 U.S.C. § 1051 *et seq*.

2007. Koehler further alleges she began to use the "Jed Gibson" trademark in January 2005, whereas Toytrackerz applied for its registration in July 2006 and was granted registration in April 2008. She alleges she began to use the "Marx toys" and "Fort Apache Fighters" trademarks in January 2005, whereas Toytrackerz applied for their registration in January 2006. On August 8, 2008, Koehler filed a petition for cancellation with the USPTO for the following trademarks registered to Toytrackerz: "Best of the West," "Johnny West Adventure," and "Jed Gibson."[2] On March 31, 2009, the Trademark Trial and Appeal Board ("TTAB") dismissed a motion by Koehler to cancel the "Marx Toys" trademark for pleading deficiencies, but granted her leave to file an amended petition to cancel.[3] Upon her filing the amended petition for cancellation, the TTAB suspended its proceedings, pending resolution of the instant civil action.[4]

In support of her proposed counterclaim, Koehler alleges that Plaintiffs were aware of her use of the trademarks at issue when they filed their applications for registration. She states she advertised her website on Plaintiffs' Yahoo! chat group, Circle X Ranch (CXR), on August 28, 2004, and February 20, 2005. She further alleges that her website clearly denoted items for sale that bore the trademarks "Best of the West," "Johnny West Adventure," "Jed Gibson," "Marx Toys," and "Fort Apache Fighters." She contends that on June 14, 2004, Plaintiff Noah Coop purchased custom boxes from her. She also alleges that in October 2004 she created a custom box/manual set for a birthday gift for Coop, which clearly bore the Marx trademark across the front of the box and on the manual as well.

---

[2] *See* Ex. 12 to Koehler's Resp. to Pls.'s Mot. for Prelim. Inj. (ECF No. 57-25).

[3] Ex. 3 to Pls.' Reply to Def. Kosowski's Resp. (ECF No. 63-4) at 6.

[4] *Id.* at 13.

On March 28, 2006, Koehler entered into an intellectual property license agreement with American Plastic to sell "Marx Toys," among other products, from April 1, 2006, through March 31, 2007. The license agreement, issued on a non-exclusive basis, defined the product under license as:

> a) the packages as originally produced by Marx Toys for their line of Action Figures and Accessories; b) "Fantasy" boxes and packaging; and c) Refurbished Vintage Marx Products; including but not limited to the use of the brands: Marx Toys, Johnny West, Best of the West, Fort Apache Fighters, Noble Knights, Mighty Vikings and other Marx Toy Figure Properties. This includes the right to use the trademarks such as "Marx, . . . .[5]

Plaintiffs commenced this lawsuit on June 30, 2008, claiming that Koehler infringed upon Toytrackerz' trademarks. In defense, Koehler contended that her commercial use of the disputed trademarks, both before and after the license agreement with American Plastic, established her prior and superior rights of use under common law. She also asserted her counterclaim to cancel Toytrackerz' trademark registrations and to oppose the applications pending before the USPTO. In support of her counterclaim for cancellation, Koehler alleges that Toytrackerz committed fraud upon the USPTO in obtaining its registrations of the following trademarks:

"Marx Toys" (Reg. No. 3,621,071)
"Best of the West" (Reg. No. 3,197,601)
"Johnny West Adventure" (Reg. No. 3,178,499)
"Jed Gibson" (Reg. No. 3,413,412)

Toytrackerz' remaining applications, which Koehler challenges for allegedly fraudulent procurement, remain pending as opposition proceedings before the USPTO. These pending applications for registration include the following:

---

[5]Ex. 3 to Toytrackerz' Mot. to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 108-1), at 1.

"Marx Toys" (App. No. 78/788,519)
"Fort Apache Fighters" (App. No. 78/775,612)
"Johnny West" (App. No. 78/788,525)

In opposing these applications, Koehler thus requests that the claims of Toytrackerz to ownership of these trademarks be nullified.

On April 27, 2009, the Court dismissed defendant Tristan Koehler, pursuant to Fed. R. Civ. P. 41(a)(2).[6] In May 2009 it also dismissed defendants American Plastic and Robin Bone for lack of personal jurisdiction.[7]

On February 19, 2010, Plaintiffs filed a motion to dismiss all their claims against defendants Jill Koehler and Kosowski without prejudice, pursuant to Fed. R. Civ. P. 42(a)(2). At the final pretrial conference on February 23, 2010, defense counsel advised the Court that defendants Koehler and Kosowski had no objection to dismissal of Plaintiffs' claims without prejudice. Koehler indicated her intent, nevertheless, to proceed with her counterclaim against Plaintiffs. The Court granted Plaintiffs' motion and dismissed the claims against defendants Koehler and Kosowski without prejudice.[8] Thus, only Koehler's counterclaim for cancellation of Toytrackerz' registrations and opposition to its pending applications remain in this action.

The Pretrial Order (ECF No. 105) entered on March 10, 2010, reflects that Koehler seeks no damages.[9] For relief, she requests only cancellation of the four trademarks registered to Toytrackerz, refusal of three of its pending trademark applications, and attorney's fees pursuant to

---

[6]*See* Order of Dismissal as to Def. Tristan Koehler (ECF No. 71).

[7]*See* Mem. & Order (ECF Nos. 73 and 80).

[8]*See* Order of Dismissal Without Prejudice (ECF No. 104).

[9]*See* Pretrial Order (ECF No. 105), at 5.

the Lanham Act, 15 U.S.C. § 1051 *et seq*.[10] On March 29, 2010, Toytrackerz filed motions to dismiss Koehler's counterclaim for lack of subject-matter jurisdiction. Koehler opposes the motions. She has also filed her application to amend the pretrial order to "reflect that [she] seeks damages under 15 U.S.C. § 1120 arising from [Toytrackerz'] fraudulent registration of the trademarks at issue in this lawsuit."[11]

## II. Motions to Dismiss Trademark Cancellation Counterclaim (ECF Nos. 107 and 108)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Toytrackerz moves to dismiss the counterclaim for trademark cancellation for lack of subject-matter jurisdiction. In its first motion to dismiss, Toytrackerz argues that the Court no longer has subject-matter jurisdiction over the counterclaim, because all the claims of Plaintiffs, including those for alleged trademark infringement, have been dismissed. Toytrackerz asserts that a counterclaim for trademark cancellation cannot stand alone to establish subject-matter jurisdiction. In its second motion to dismiss, Toytrackerz argues that Koehler lacks standing to assert a claim for trademark cancellation, because she cannot show an injury to a legally protected interest. In the third motion to dismiss, Plaintiffs Toytrackerz and Coop contend that opposition to applications for registration of trademarks is an administrative remedy for which federal courts lack subject matter jurisdiction.

Opposing the motions, Koehler contends the Court has subject-matter jurisdiction over her counterclaim, pursuant to 15 U.S.C. § 1119, because it involves a registered mark. She also contends she has standing to assert such a counterclaim. She has been an authorized seller and distributor of toy action figures and accessories that bear the trademarks long before Toytrackerz applied for

---

[10]*Id.* at 5, 6.

[11]App. to Amend Pretrial Order (ECF No. 115), at 2.

federal registration. Toytrackerz' registration of these trademarks has negatively affected her business in that many consumers are deterred from purchasing items from her.

    A.    **Whether the Court Has Subject-Matter Jurisdiction over Koehler's Trademark Cancellation Counterclaim**

Section 39 of the Lanham Act, 15 U.S.C. § 1121, vests federal courts with subject-matter jurisdiction over causes of action arising under the Act. It provides that the district courts "shall have original jurisdiction . . . of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties."[12] In addition, 28 U.S.C. § 1338 provides that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . trademarks."[13]

Section 37 of the Lanham Act, 15 U.S.C. § 1119, specifically empowers a court to order the cancellation of a federally-registered trademark in whole or in part upon "any action involving a registered mark."[14] It gives the courts concurrent power with the USPTO to conduct cancellation proceedings.[15] Although 15 U.S.C. § 1119 gives the court the power to cancel a federal trademark registration, it is not an independent source of jurisdiction; it merely defines certain available remedies.[16] Section 37 of the Lanham Act "assumes a properly instituted and otherwise

---

[12] 15 U.S.C. § 1121(a).

[13] 28 U.S.C. § 1338(a).

[14] 15 U.S.C. § 1119.

[15] Thomas J. McCarthy, *McCarthy on Trademarks and Unfair Competition* (4th ed. 2010) § 30:109.

[16] *Thomas & Betts Corp. v. Panduit Corp.*, 48 F. Supp. 2d 1088, 1093 (N.D. Ill. 1999)*; Clamp-All Corp. v. Cast Iron Soil Pipe Inst.*, 3 U.S.P.Q.2d 1018, 1024 n. 12, 1987 WL 9760, at *7 (D. Mass. 1987).

7

jurisdictionally supportable action involving a registered mark."[17] A court is empowered by 15 U.S.C. § 1119 to order the cancellation of a trademark registration when there is some independent basis for federal jurisdiction apart from the cancellation claim.[18] Cancellation claims under § 1119 are typically brought as a counterclaim to a trademark infringement or unfair competition action.[19] In addition, fraudulent procurement of a trademark registration is often a grounds for cancellation in civil litigation.[20]

In *Universal Sewing Machine Co. v. Standard Sewing Equipment Corp.*,[21] a plaintiff claiming

---

[17]*Universal Sewing Mach. Co. v. Standard Sewing Equip. Corp.*, 185 F. Supp. 257, 260 (S.D.N.Y. 1960). *See also* McCarthy § 30:110.

[18]*See Universal Sewing,* 185 F. Supp. at 259-60 (distinguishing between cases where a party seeks cancellation offensively and relies solely on that claim for federal jurisdiction, and cases where there is an "independent basis of federal jurisdiction, and wherein the validity of a registered trademark is brought into issue, for example, by way of defense or . . . counterclaim.").

[19]*See Empresa Cubana del Tabaco v. Culbro Corp.,* 541 F.3d 476, 478 (2d Cir. 2008) ("A request for dismissal of a cancellation proceeding pursuant to section 1119 ordinarily is made as a counterclaim in an infringement action."); *Nasalok Coating Corp. v. Nylok Corp.,* 522 F.3d 1320, 1325 (Fed. Cir. 2008) ("[Section 1119] allows a trademark infringement defendant to assert a counterclaim to cancel the registration."). *See also* McCarthy § 30:109 ("a [trademark] registration may be collaterally attacked in any civil action where validity of the mark is in issue. For example, a defendant charged with infringement of a registered mark may counterclaim for cancellation of that registration.").

[20]*See Travelodge Corp. v. Siragusa*, 228 F. Supp. 238, 242 (N.D. Ala. 1964) ("Section 1119 grants this court power to order cancellation of the registration and Section 1064 includes registration obtained fraudulently as grounds for such cancellation . . . ."); *Schwinn Bicycle Co. v. Murray Ohio Mfg. Co.*, 339 F. Supp. 973, 982-83 (M.D. Tenn. 1971) (Section 1119 empowers court to cancel registration of trademarks that are "obtained fraudulently"); *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990) ("A party may seek cancellation of a registered trademark on the basis of fraud under 15 U.S.C. § 1064(c) by proving a false representation regarding a material fact, the registrant's knowledge or belief that the representation is false, the intent to induce reliance upon the misrepresentation and reasonable reliance thereon, and damages proximately resulting from the reliance.").

[21]185 F. Supp. 257, 259-60 (S.D.N.Y. 1960).

common law rights in the trademark "Universal" sought cancellation of the defendant's federal registration of the mark. The court held that it did not have subject-matter jurisdiction over the cancellation claim under Section 37 of the Lanham Act.[22] It further held that a party seeking cancellation offensively and relying solely upon that claim for federal subject-matter jurisdiction was first relegated to exhausting administrative remedies, before resorting to the courts.[23] The court drew a distinction, however, between actions in which a party seeks cancellation offensively and relies solely on that claim for federal jurisdiction, and those with an independent basis for federal jurisdiction, wherein the validity of a registered mark becomes an issue, for example, by way of defense or counterclaim.[24]

In another infringement case, *Thomas & Betts Corp. v. Panduit Corp.*,[25] the court addressed the issue of its jurisdiction under 15 U.S.C. § 1119. Specifically, it addressed whether a claim for unfair competition must continue to exist in order for the court to grant the relief sought, cancellation of the trademark. The court held that 15 U.S.C. § 1119 was not an independent source of jurisdiction; it merely defined certain available remedies, including cancellation.[26] It held that the claim for unfair competition must continue to be viable, in order for the court to cancel the trademark.[27] In federal question cases, an actual controversy must exist at all stages, not merely at

---

[22]*Id.* at 260.

[23]*Id.* at 259.

[24]*Universal Sewing*, 185 F. Supp. at 259-60.

[25]48 F. Supp. 2d 1088, 1093-94 (N.D. Ill. 1999).

[26]*Id.* at 1093.

[27]*Id.* at 1094.

9

the time the complaint is filed.[28] The court has an ongoing duty to examine its jurisdiction and should consider post-complaint events in the evaluation of continuing jurisdiction.[29]

The Court agrees with *Universal Sewing* and *Thomas & Betts*, wherein the court held that a party who seeks cancellation of a trademark under 15 U.S.C. § 1119 must have an independent basis for federal subject-matter jurisdiction. Like *Universal Sewing*, dismissal of all the claims of Plaintiffs essentially leaves Koehler's remaining counterclaim as an attempt to seek cancellation offensively as to the four disputed registered marks (Johnny West Adventure, Best of the West, Marx Toys, and Jed Gibson). When she filed her counterclaim for cancellation, the Court had subject-matter jurisdiction over them, because of the claims by Plaintiffs that Koehler had infringed upon Toytrackerz trademarks. Jurisdiction over the counterclaim for cancellation derived from 15 U.S.C. § 1119, as this case was at that time an "action involving a registered mark." When Plaintiffs dismissed their claims for infringement, the Court no longer had jurisdiction to order cancellation of the trademarks.[30] Because 15 U.S.C. § 1119 is not an independent source of jurisdiction, but merely defines available remedies,[31] Koehler must otherwise show that the Court has some other basis for jurisdiction over her counterclaim for cancellation. She has failed to do so. Nor can she rely upon 15 U.S.C. § 1120 for jurisdiction, because she does not pursue any claim for damages

---

[28]*Thomas & Betts*, 48 F. Supp. 2d at 1094 (citing *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).

[29]*Id.* (citing *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 636 (Fed. Cir. 1991)).

[30]*See Nike, Inc. v. Already, LLC,* No. 09 Civ. 6366(RJS), 2011 WL 310321, at *7 (S.D.N.Y. Jan. 20, 2011) ("[I]f an event subsequent to the pleadings strips a court of jurisdiction over the action, the court is also stripped of the ability to order cancellation of a registered trademark pursuant to Section 1119.").

[31]*Thomas & Betts,* 48 F. Supp. 2d at 1093.

under that statute. The Court therefore does not have subject-matter jurisdiction over the counterclaim for cancellation of the trademarks in question. Accordingly, it grants Toytrackerz' Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 107).

**B. Whether Koehler Has Standing to Assert a Counterclaim for Trademark Cancellation**

Toytrackerz argues in its second Motion to Dismiss (ECF No. 108) that Koehler does not have standing to assert a counterclaim for cancellation of its trademarks, because she cannot show an injury to a legally protected interest. Having determined that it lacks jurisdiction over Koehler's counterclaim, the Court need not address the issue of whether she has standing.

**III. Motion to Dismiss Trademark Opposition Counterclaim (ECF No. 112)**

Plaintiffs also seek dismissal of Koehler's counterclaim for trademark opposition, pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject-matter jurisdiction. They contend the governing statute, 15 U.S.C. § 1063, provides only administrative authority to seek opposition of a trademark registration before the USPTO. They assert that the statute does not authorize a federal court to exercise subject-matter jurisdiction for such a claim.

15 U.S.C. § 1063(a) sets out who may file, as well as the procedure and deadline for filing an opposition to a pending application for registration of a trademark:

> Any person who believes that he would be damaged by the registration of a mark upon the principal register . . . may, upon payment of the prescribed fee, file an opposition in the Patent and Trademark Office, stating the grounds therefor, within thirty days after the publication . . . of the mark sought to be registered.[32]

The rule clearly requires trademark oppositions under 15 U.S.C. § 1063 to be filed with the USPTO within thirty days after publication of the mark. In her counterclaim Koehler alleges that

---

[32] 15 U.S.C. § 1063(a).

11

Toytrackerz' pending trademark applications for "Marx Toys" and "Fort Apache Fighters" were "put under opposition by American [Plastic]."[33] She has not alleged that she herself has filed any opposition to the applications. The Court finds no evidence that she did file an opposition to them. Absent evidence that she timely filed an opposition to the "Marx Toys" and "Fort Apache Fighters" pending trademark applications, Koehler cannot proceed on her counterclaim for opposition of trademarks under 15 U.S.C. § 1063.

For the same reasons that the Court lacks jurisdiction over Koehler's counterclaim for cancellation, the Court also lacks jurisdiction over the counterclaim to oppose Toytrackerz' pending trademark registration applications. The Court does not have jurisdiction, pursuant to 15 U.S.C. § 1119, because with the dismissal of all of Plaintiffs' infringement claims, this is no longer an "action involving a registered mark." The Court finds, therefore, that it does not have the jurisdiction and authority under 15 U.S.C. § 1119 to order the remedy requested by Koehler, i.e., directing the USPTO to refuse Toytrackerz' pending trademark applications. Accordingly, it grants Plaintiffs' Motion for Partial Dismissal for Lack of Subject Matter Jurisdiction (ECF No. 112).

## IV.  Application to Amend Pretrial Order (ECF No. 115)

By her separate "Application" (motion), Koehler asks the Court to amend the pretrial order to allow her to seek damages under 15 U.S.C. § 1120 upon her counterclaim against Toytrackerz for fraudulent procurement of a trademark registration. She points to the inclusion of such a counterclaim for damages in her answer to the complaint, but says it was inadvertently omitted from the proposed pretrial order.

In response, Plaintiffs oppose the motion for several reasons. They suggest it is simply an

---

[33]*See* Answer and Counterclaim (ECF No. 84) at ¶¶ 59 and 68.

effort to "jockey" for a better position against the instant motions to dismiss and thereby avoid the loss of subject-matter jurisdiction over the counterclaim. They also argue that they would be caught by surprise and prejudice by the proposed amendment, which would require re-opening discovery, additional motions, and reconsidering trial strategy. They challenge the assertion by Koehler that omitting damages from the proposed pretrial order was simply inadvertent. Finally, they suggest that denial of the motion would not prejudice the rights of Koehler to further pursue her claims, if she chooses to do so inasmuch as the instant dismissals for want of jurisdiction will be without prejudice.

District of Kansas Rule 7.1(c) provides that, "[t]he moving party may file and serve a written reply brief or memorandum," following a response by the party opposing the motion. Koehler has filed no reply, however, to the response of Plaintiffs.

The Court must first address the question of whether it still has subject-matter jurisdiction to rule upon the motion to amend. Plaintiffs raise the issue only by implication. Koehler does not mention it. The Court has a duty to address it. Having found that it lacks jurisdiction over the subject matter of the counterclaim, does it nevertheless retain jurisdiction over the motion to amend the pretrial order, so as to include a claim for which jurisdiction would lie, particularly if it was contained in the original pleading? For the following reasons, the Court finds it does not retain such jurisdiction.

First, the final pretrial order supercedes all prior pleadings and orders and controls the proceedings thereafter.[34] Claims or defenses omitted from the final pretrial order are lost and

---

[34] *See* Pretrial Order (ECF No. 105). *See also* Fed. R. Civ. P. 16(d); D. Kan. Rule 16.2(c).

13

deemed to be waived, even though they were earlier asserted in the pleadings.[35]

Second, several cases have addressed the question of whether a court can amend a pleading, after a ruling that it lacks jurisdiction of the subject matter of the case as then pleaded. In *Broad v. DKP Corp.*,[36] the court had before it a motion to dismiss a complaint for lack of subject-matter jurisdiction and a cross-motion to amend the complaint to assert a new basis for jurisdiction. Ordering dismissal and denying the motion to amend, the court addressed the jurisdictional issue:

> I proceed to the question of whether I have the power to entertain plaintiff's cross-motion to amend the complaint to assert an entirely new basis for jurisdiction once jurisdiction over the original complaint has been challenged and found wanting. "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."[37]

Additional research has failed to uncover a reported decision exactly on point regarding a motion to amend a final pretrial order after a ruling that jurisdiction no longer exists for its subject matter. Several cases, however, provide persuasive authority against consideration of such a motion, once the absence of subject-matter jurisdiction has been determined.[38]

For the foregoing reasons, the Court holds that it lacks jurisdiction to address the pending Application to Amend Pretrial Order. It will address the merits of the motion, nevertheless, for whatever purpose a further ruling may serve. For the following reasons, the Court will deny the

---

[35]*Cortez v. Wal-Mart Stores, Inc.*, 460 F.3d 1268, 1276, 1277 (10th Cir. 2006); *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1304, 1305 (10th Cir. 2003).

[36]No. 97 Civ. 2029 (LAP), 1998 WL 516113 (S.D.N.Y. Aug. 19, 1998).

[37]*Broad*, 1998 WL 516113, at 4 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex Parte McCardle*, 74 U.S. 506, 514 (1868)).

[38]*See Daneshvar v. Graphic Tech., Inc.*, 237 Fed. Appx. 309, 314-17, 2007 WL 1417285, at *4-6 (10th Cir. 2007) (unpub.); *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 512 (5th Cir. 1985); *Hung Duc Bui v. IBP, Inc.*, 201 F.R.D. 509, 515 (D. Kan. 2001).

motion for lack of merit.

Federal Rule of Civil Procedure 16(e) authorizes the court to modify a pretrial order "only to prevent manifest injustice." In addition, District of Kansas Rule 16.2(c) states that, "The pretrial order . . . controls the subsequent course of the action unless modified by: (1) consent of the parties and the court; or (2) an order of the court to prevent manifest injustice." The party moving for modification of the pretrial order bears the burden of demonstrating manifest injustice.[39] Plaintiffs do not consent to the proposed amendment. Koehler bears the burden, therefore, to show that the amendment is necessary to prevent manifest injustice. When considering whether a party has demonstrated manifest injustice, the court considers four factors: "(1) prejudice or surprise to the party opposing trial of the issue; (2) the ability of [the moving] party to cure any prejudice; (3) disruption to the orderly and efficient trial of the case by inclusion of the new issue; and (4) bad faith by the party seeking to modify the order."[40]

Briefing by the parties provides little information for considering the first three factors. Claiming prejudice and surprise, Plaintiffs assert in general a need for additional discovery and motions and a reconsideration of trial strategy, if amendment is allowed. Koehler does not deny that assertion. Noting the prior activity of the parties, the Court assumes that adding a counterclaim for damages would at least create a need for them to supplement their designations of witnesses and exhibits and possibly provide disclosures as might be required by Fed. R. Civ. P. 26(b)(4).

The fourth factor to consider in determining if the proposed amendment is necessary to prevent manifest injustice is "bad faith" by the party seeking it. As a single ground for amending

---

[39] *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1222 (10th Cir. 2000).

[40] *Id.*

15

the pretrial order to include a claim for damages, the motion states that, "This avenue of recovery was inadvertently omitted from the proposed Pretrial Order."[41] The motion also states that, "The undersigned admittedly submitted a proposed Pretrial Order that failed to list Defendant's theory of recovery against Plaintiffs."[42]

But some additional facts are relevant to the question of good faith or bad faith as it relates to the motion, especially with regard to the preparation of the pretrial order and to the final pretrial conference itself. In her Answer and Counterclaim (ECF No. 84), a total of sixty pages, Koehler asserted seven separate counterclaims. Five of them allege fraud and seek either cancellation of existing trademarks or refusal of registration, as well as damages in unspecified amounts. Two of the counterclaims seek damages for allegedly unfair competition and deceptive trade and for libel, defamation and harassment, as well as other relief.

Before the final pretrial conference of February 23, 2010, defense counsel completed and submitted to the Court the proposed pretrial order. It followed the standard form published by the Court on its website for use by counsel. Accordingly, the order included the following separate sections to be completed by counsel: "5. FACTUAL CONTENTIONS." "6. THEORIES OF RECOVERY." "8. FACTUAL ISSUES." "9. LEGAL ISSUES." "10. DAMAGES." "11. NON-MONETARY RELIEF REQUESTED, IF ANY." Counsel for the parties, including defense counsel, completed the text for all of these sections. Their proposed order involved only the counterclaim for cancellation and refusal of registration of trademarks. It excluded the claims of Plaintiffs, in accordance with their dismissals. It also excluded all the counterclaims for damages.

---

[41] Appl. to Am. Pretrial Order (ECF No. 115) at 1.

[42] *Id.*

16

The proposed order included the counterclaim for fraud, but only as a premise for cancellation and refusal of registrations. Section "2. NATURE OF THE CASE" stated, "By agreement of the parties, the claims of Plaintiffs have been dismissed without prejudice. Koehler has counterclaimed for opposition of pending trademark applications, and cancellation of several trademark registrations owned by Plaintiff." As already noted, Section "10. DAMAGES" contained only the word "None." Section "11. NON-MONETARY RELIEF REQUESTED, IF ANY" contained three sub-sections, respectively for refusal of applications, cancellation of trademarks, and for attorney's fees, pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.*

With this proposed pretrial order, as submitted by counsel, and pursuant to Fed. R. Civ. P. 16(c) and D. Kan. Rule 16.2, the Court conducted the final pretrial conference by telephone on February 23, 2010. Counsel for the parties appeared and participated. The Court reviewed the proposed pretrial order with counsel, entertained their comments and suggestions, and provided them with ample opportunity to assert any questions, objections, or changes to the proposed order.

Following its general procedure after the final pretrial conference, the Court made any necessary changes. It then submitted the proposed draft to counsel for the parties and invited their objections and suggestions, before signing and entering it as the final pretrial order for this case. Counsel thus had three separate opportunities to address the adequacy of the final pretrial order: at its initial preparation; at the final pretrial conference; and afterwards, before the Court entered it. On none of these occasions did defense counsel assert any suggestion of inadequacy or of an intent to pursue any claim for damages.

Plaintiffs contend that the omission of damages from the pretrial order does not result from inadvertence. They assert the motion to amend is nothing more than a belated effort by Koehler to

avoid dismissal of the counterclaim for lack of jurisdiction. The Court finds nothing of consequence to suggest otherwise. It notes the following additional facts:

Plaintiffs filed their motions to dismiss respectively on March 29 and April 5, 2010. Opposing the motions, Koehler filed her combined response (ECF No. 114) on April 15, 2010, slightly more than one month after entry of the final pretrial order. On April 15 she also filed the instant Application to Amend Pretrial Order. Consisting of two pages, unaccompanied by any affidavit or memorandum, the motion simply says that omission of damages from the pretrial order is the result of inadvertence. Koehler provides no explanation for inadvertence, no suggestion of mitigating circumstance, only a bare request to add damages.

On March 29, 2010, Koehler also filed her List of Witnesses and Exhibits.[43] It identifies eight witnesses and twenty-seven exhibits. It includes a brief synopsis as to the proposed testimony for each witness. The Court finds nothing in this filing, however, that suggests any testimony or documentary evidence on the subject of damages. The list of exhibits includes some receipts, but they appear to be related to the contention that Koehler exercised prior use of the trademarks.

The motion to amend itself offers no suggestion as to what damages Koehler would seek or in what amount. Actual? Compensatory? Punitive? Nominal? Past or future damages? Or both? Perhaps she would seek damages to be determined only by an accounting to be ordered by the Court. Yet Koehler makes no request for an accounting as a part of any relief. Nor does the final Pretrial Order contain any suggestion of a possible accounting.

By contrast, the form for a final pretrial order that appears on the website of the Court for use by counsel, includes a requirement that a claim for damages be specific, both for plaintiff and

---

[43]ECF No. 106.

for defendant. The form states with regard to defendant's damages:

> *State "None claimed" if appropriate. If defendant is asserting a claim for damages, however, state the specific injuries suffered, loss sustained, and/or the nature of any damages sustained and claimed by defendant. Include the dollar amount of damages and/or any other relief requested. This should be a specific, itemized list. In addition, regardless of whether defendant has asserted a counterclaim, state whether defendant claims an entitlement to attorneys' fees and, if so, the specific statutory or other basis for such fees.*[44]

Koehler, of course, provided no such statement of damages for the final pretrial order. Nor does she now provide any such statement. If she seriously intended to pursue a claim for damages, the Court would expect her at least to include with her motion some further explanation both as to the nature and amount of those damages and how they are to be calculated or otherwise determined. Her request simply to add "damages under 15 U.S.C. § 1120 arising from [Toytrackerz'] fraudulent registration of the trademarks at issue in this lawsuit" does not comply with the requirements and purpose for a final pretrial order. Koehler has similarly failed to suggest any proposed amendments or revisions to her witness and exhibit list, which in present form suggests no evidence of damages.

For the foregoing reasons, the Court cannot find that the Application to Amend Pretrial Order constitutes an effort in good faith to assert a claim for damages. The motion instead appears to reflect an effort simply to avoid the finding that the Court no longer has jurisdiction over the subject matter of the counterclaim as set forth in the final Pretrial Order. The Court finds that Koehler has not sustained the burden to show that the final pretrial order should be amended to avoid manifest injustice. If denial of her motion creates any injustice, it is not manifest. The Court, therefore, denies the Application to Amend Pretrial Order.

---

[44]Pretrial Order form § 10.b., *available at* http://www.ksd.uscourts.gov/forms/index.php.

## V. Conclusion

In the absence of an independent basis for the Court's jurisdiction over an action involving a registered mark under 15 U.S.C. § 1119, the Court lacks subject-matter jurisdiction over Koehler's counterclaim for cancellation of Toytrackerz' trademark registrations, as well as her counterclaim to oppose Toytrackerz' pending applications. Given the unopposed dismissals of the claims of Plaintiffs, the Court no longer has a remaining, independent basis to assert subject-matter jurisdiction over Koehler's counterclaim. Koehler, moreover, has not shown that her proposed amendment to the Pretrial Order is necessary to avoid manifest injustice.

**IT IS THEREFORE ORDERED** that Plaintiff Toytrackerz' Motions to Dismiss for Lack of Subject Matter Jurisdiction (ECF Nos. 107 and 108) are granted.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Dismissal for Lack of Subject Matter Jurisdiction (ECF No. 112) is granted.

**IT IS FURTHER ORDERED** that Defendant Koehler's Motion to Amend Pretrial Order (ECF No. 115) is denied.

**IT IS FURTHER ORDERED** that Toytrackerz' Motion to Exclude Evidence and/or Testimony of Koehler's Alleged Prior Use of Trademarks (ECF No. 110) is denied as moot.

Dated in Kansas City, Kansas on this 25th day of March, 2011.

S/ Gerald L. Rushfelt
Gerald L. Rushfelt
United States Magistrate Judge
